**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ISMAEL SALAM, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:13-cv-09305 |
| v. | ) ) | Hon. Charles R. Norgle, Sr. |
| LIFEWATCH, INC., a New York corporation, | ) ) ) | Magistrate Judge Arlander Keys |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**
**AND TO DISMISS PLAINTIFF'S COMPLAINT**

Dated:  February 18, 2014

Patrick Cotter (6202681)
Mark P. Miller (6191128)
Christine E. Skoczylas (6293811)
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
Tel:  (312) 357-1313
Fax:   (312) 759-5646
pcotter@btlaw.com
mmiller@btlaw.com
cskoczylas@btlaw.com
*Attorneys for Defendant Lifewatch, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    THE TELEPHONE CONSUMER PROTECTION ACT.................................... 2

III.   THE COURT SHOULD STRIKE SALAM'S CLASS ACTION ALLEGATIONS. ........ 2

    A.    The Putative Class Is Not Ascertainable....................................................4

    B.    Salam Cannot Satisfy the Requirements of Rule 23(a). ..........................7

        1.    Salam Cannot Demonstrate Commonality Under Rule 23(a).................... 7

            a.    Individualized Fact Questions Regarding Consent Predominate Over Any Common Issues............................................................. 8

            b.    Individualized Fact Questions Relating to Lifewatch's Alleged Relationships with Third-Party Telemarketers Preclude Certification................................................................................... 9

        2.    Salam Is Not an Appropriate Class Representative. ................................ 10

    C.    Salam Cannot Satisfy the Requirements of Rule 23(b)(3).....................13

        1.    Common Questions of Law or Fact Do Not Predominate........................ 13

        2.    A Class Action Is Not the Superior Method of Adjudication.................. 15

    D.    Salam's Request for Certification Under Rule 23(b)(2) Is Meritless. ..................16

IV.   THE COURT SHOULD DISMISS SALAM'S INDIVIDUAL TCPA CLAIM............. 17

    A.    Salam Does Not Sufficiently Plead That the Alleged Call Was Made Using an Automatic Telephone Dialing System or an Artificial or Prerecorded Voice...................................................................................19

    B.    Salam Does Not Allege Sufficient Details Regarding the Alleged Calls. .............19

    C.    Salam's Complaint Contains No Allegations to Support a Vicarious Liability Theory. ....................................................................................20

V.    CONCLUSION............................................................................................. 22

# TABLE OF AUTHORITIES

## Federal Cases

*Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471
(N.D. Ill. Dec. 14, 2009) ...................................................................................................19, 20

*Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980) ......................................................................6

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................18

*Balthazor v. Central Credit Services, Inc.*, No. 10-62435-CIV, 2012 WL 6725872
(S.D. Fla. Dec. 27, 2012) ...........................................................................................................8

*Board of Education v. Climatemp, Inc.*, Nos. 79 C 3144 & 79 C 4898, 1981 WL 2033,
(N.D. Ill. Feb. 20, 1981)............................................................................................................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................18

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) .........................................17

*Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006)...............................................7

*Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742 (7th Cir. 1998)..........................21

*Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008) ...................................6

*Clark v. McDonald's  Corp.*, 213 F.R.D. 198 (D.N.J. 2003)...........................................................3

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). ......................................................................4

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 11686 (9th Cir. 2007)............................................................16

*Elliott v. ITT Corp.*, 150 F.R.D. 569 (N.D. Ill. 1992)..................................................................16

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995) .................................................15

*Gannon v. Network Telephone Services, Inc.*, No. 2:12-cv-09777, 2013 WL 2450199
(C.D. Cal. June 5, 2013) ........................................................................................................1, 5

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) .....................................3

*Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318 (5th Cir. 2008)......................................1, 8, 14

*Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485 (C.D. Ill. 2007) ...........................6

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06-C-949, 2007 WL 4365359
(N.D. Ill. Dec. 13, 2007) ......................................................................................6, 14

*Gomez v. Illinois State Board of Education*, 117 F.R.D. 394 (N.D. Ill. 1987) ...............................4

*Hickey v. Great Western Mortgage Corp.*, No. 94 C 3638, 1995 WL 121534
(N.D. Ill. Mar. 17, 1995) .................................................................................10

*Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977 (N.D. Ill. 2013) .............................18

*Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) ...........................3

*Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, (N.D. Cal. Dec. 17, 2009) ...............3

*In re Discovery Zone Securities Litigation*, 169 F.R.D. 104 (N.D. Ill. 1996) ........................11, 12

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008)................................14

*Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930
(7th Cir. 2012)...............................................................................................18

*Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) .....................................1, 14

*Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324 (N.D. Ill. 1993).......................................11, 13

*Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012).........18, 19

*Kline v. Colwell, Banker, & Co.*, 508 F.2d 226 (9th Cir. 1974) ....................................................16

*Knutson v. Reply!, Inc.*, No. 10-CV-1267, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ..............19

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003)................................................16

*Machesney v. Lar-Brev of Howell, Inc.*, 292 F.R.D. 412 (E.D. Mich. 2013) .................................5

*Messner v. Northshore University HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ...........................6

*Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012) ....................................................15

*Mowry v. JP Morgan Chase Bank*, No. 06 C 4312, 2007 WL 1772142
(N.D. Ill. June 19, 2007) ................................................................................12

*Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847 (N.D. Ill. 2006)................................3

*Murphey v. Lanier*, 204 F.3d 911 (9th Cir. 2000).........................................................................15

*O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F. Supp. 1348 (S.D. Fl. 1996)................................10

*Ostler v. Level 3 Communications, Inc.*, No. IP 00-0718-C H/K, 2002 WL 31040337
(S.D. Ind. Aug. 27, 2002)............................................................................................5

*Palm Beach Golf Center–Boca, Inc. v. Sarris*, --- F. Supp. 2d ---, No. 12-80178-CIV,
2013 WL 5972173 (S.D. Fla. 2013) ...........................................................................22

*Reed v. Advocate Health Care*, No. 06-cv-3337, 2009 WL 3146999
(N.D. Ill. Sept. 28, 2009) ...........................................................................................13

*Sadowski v. Med1 Online, LLC*, No. 07-C-2973, 2008 WL 489360 (N.D. Ill. Feb. 20, 2008) .......6

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)..........................................3

*Saunders v. NCO Financial Systems, Inc.*, No. 12-CV-1750 BMC, 2012 WL 6644278
(E.D.N.Y. Dec. 19, 2012) .............................................................................................1

*Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004
(N.D. Ill. Sept. 3, 2013) ...............................................................................................9

*Scheinman v. Martin's Bulk Milk Service, Inc.*, No. 09 C 5340, 2011 WL 1399260
(N.D. Ill. Apr. 12, 2011) .............................................................................................21

*Sefton v. Toyota Motor Sales U.S.A., Inc.*, No. 09 C 3787, 2010 WL 1506709
(N.D. Ill. Apr. 14, 2010) .............................................................................................13

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) .................................................................13

*Smith v. State Farm Mutual Automobile Insurance Co.*, No. 13 C 2018,
2013 WL 5346430 (N.D. Ill. Sept. 23, 2013) ............................................................18

*Stubbs v. McDonald's Corp.*, 224 F.R.D. 668 (D. Kan. 2004)..........................................3

*Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977) ...........................10, 12

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)...............................................18

*Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012) ............................20

*Thornton v. State Farm Mutual Auto Insurance Co.*, No 1:06-cv-18, 2006 WL 3359482
(N.D. Ohio Nov. 17, 2005) ...........................................................................................3

*Ticor Title Ins., Co. v. Brown*, 511 U.S. 117 (1994)......................................................17

*United States v. Wood*, 925 F.2d 1580 (7th Cir. 1991)...................................................11

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) ....................4, 5

*Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668 (D. Wyo. 2011) ........................8, 14

*Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527
     (N.D. Ill. Dec. 27, 2005) ...........................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................7, 13

*Williams v. Ford Motor Co.*, 192 F.R.D. 580  (N.D. Ill. 2000) ......................................10

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001) ....................16

### State Cases

*Freedman v. Advanced Wireless Cellular Communications, Inc.*, No. SOM-L-611-02,
     2005 WL 2122304 (N.J. Super. Ct. June 24, 2005).....................................................16

*Levine v. 9 Net Avenue, Inc.*, No. A-1107-00T1, 2001 WL 34013297
     (N.J. Super. App. Div. June 7, 2001) .......................................................................15

### Statutes

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................ 2, 8, 19

### Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 18, 22

Federal Rule of Civil Procedure 12(f) ................................................................ 2, 4, 17, 22

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

### Other Authorities

47 C.F.R. § 64.1200(a)(1)(iii) .................................................................................... 2

Federal Rule of Civil Procedure 23(b)(2), Advisory Committee Note (1966)............................ 16

*In re Joint Petition Filed by DISH Network, LLC, et al. for Declaratory Ruling Concerning
     the Telephone Consumer Protection Act (TCPA) Rules*, 28 F.C.C.R. 6574 (May 9, 2013)........9

*In re Rules & Regulations Implementing the TCPA of 1991*, 27 F.C.C.R. 1830
     (Feb. 15. 2012).................................................................................................2, 5, 8

Defendant Lifewatch, Inc. ("Lifewatch"), by and through its attorneys, Barnes and Thornburg LLP, respectfully submits this Memorandum in Support of its Motion to Strike Plaintiff's Class Allegations and to Dismiss Plaintiff's Complaint.

## I.        INTRODUCTION

In his Complaint, Plaintiff Ismael Salam ("Salam")—who is himself a plaintiff's class action lawyer—attempts to assert a nationwide class action against Lifewatch for purported violations of the Telephone Consumer Protection Act ("TCPA"). He alleges that Lifewatch or its supposed agents placed unauthorized telemarketing calls to his cellular telephone without his "prior express consent," entitling him, and other unidentified class members like him, to actual and statutory damages of potentially tens of millions of dollars.

Courts recognize that "remedial laws," like the TCPA, however well-intended, can "be abused and perverted into money-making vehicles for individuals and lawyers." *Saunders v. NCO Fin. Sys., Inc.*, No. 12-CV-1750 BMC, 2012 WL 6644278, at *3 (E.D.N.Y. Dec. 19, 2012). With this potential for abuse in mind, and in light of the duty to conduct a "rigorous analysis" of whether class certification requirements are satisfied, courts have repeatedly refused to grant certification in cases that abuse the TCPA and class action law. *See, e.g.*, *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing class certification in TCPA case because plaintiff "failed to advance any viable theory employing generalized proof" of consent); *Gannon v. Network Tel. Servs., Inc.*, No. 2:12-cv-09777, 2013 WL 2450199, at *2-3 (C.D. Cal. June 5, 2013) (holding that certification was improper because the facts of the case would require the court to hold "mini-trials" to determine who received unauthorized text messages in order to determine class membership); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 108-09 (N.D. Ill. 2013) (denying certification where the class definition included thousands of

1

individuals who may have consented to receiving calls on their cellular telephones and thus had no grievance under the TCPA).

Salam's class allegations demand a similar outcome. The nature and substance of his class action claim is not suitable for class adjudication. Moreover, even in his non-class allegations, Salam fails to state a cause of action under the TCPA. Accordingly, the Court should dismiss Salam's lawsuit and/or strike the class allegations now, before the parties and the Court incur the substantial costs of litigating a facially-deficient putative class action.

## II. THE TELEPHONE CONSUMER PROTECTION ACT

The TCPA and its implementing rules and regulations prohibit any person or entity from making a call using an automatic telephone dialing system or an artificial or prerecorded voice to a cellular phone without the "prior express consent" of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1)(iii). In 2012, the FCC adopted a new interpretation of "prior express consent" for telemarketing calls, effective October 16, 2013. *In re Rules & Regs. Implementing the TCPA of 1991*, 27 F.C.C.R. 1830 (Feb. 15. 2012). The FCC now requires "prior express ***written*** consent" before any entity can place an artificial or prerecorded voice call to a cellular phone. *Id.* at 1837 (emphasis added). The new "written consent" definition is not as restrictive as it seems at first blush, as the FCC defines "written" to include consent obtained electronically or digitally, or under the federal E-Sign Act. 27 F.C.C.R. at 1843. Accordingly, cellular phone owners can provide "written consent" by "e-mail, website form, text message, telephone keypress, or voice recording." *Id.* at 1843-44.

## III. THE COURT SHOULD STRIKE SALAM'S CLASS ACTION ALLEGATIONS.

Motions to strike under Rule 12(f) are an appropriate use of the "court's inherent power to prune pleadings in order to expedite the administration of justice and to prevent abuse of its processes." *Bd. of Educ. v. Climatemp, Inc.*, Nos. 79 C 3144 & 79 C 4898, 1981 WL 2033, at *2

(N.D. Ill. Feb. 20, 1981); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (noting that motions to strike can remove unnecessary clutter from the case and expedite proceedings). Where intractable problems barring class treatment appear from the face of the pleadings, neither courts nor litigants should be burdened with wasteful discovery and class certification expense. *See, e.g.*, *Thornton v. State Farm Mut. Auto Ins. Co.*, No 1:06-cv-18, 2006 WL 3359482, at *4 (N.D. Ohio Nov. 17, 2005) (granting motion to strike plaintiff's class action allegations because "any discovery would only further reveal that [plaintiff's] claims are not appropriate for class treatment"); *Muehlbauer v. Gen'l Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006) (observing that, pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D), a court can review class allegations before discovery and strike them if they are "facially deficient and no amount of discovery can save them").

Federal courts routinely use motions to strike to test the viability of a class at the earliest pleading stage of litigation. *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (collecting cases); *see also Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (instructing that "[s]ometimes the issues are plain enough from the pleadings" to show that a class should not be certified); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) (explaining that a court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (concluding that motion to strike was not premature because "whether the interests of the absent parties are fairly encompassed with the named plaintiff's claims" could be determined solely from the pleadings); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (finding motion to strike class allegations appropriate "where the complaint itself demonstrates that the requirements for maintaining a

class action cannot be met"). This early assessment of the feasibility of class certification has taken on additional utility in light of recent Supreme Court decisions limiting the use of Rule 23. *See, e.g.*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Salam initially alleges that Lifewatch or its supposed agents placed phone calls "*en masse*" to "each of the members of the Class without prior express ***written*** consent" (Compl. ¶ 1) (emphasis added) and later alleges that Lifewatch called "thousands of wireless telephone numbers . . . without prior express consent," in violation of the TCPA (Compl. ¶¶ 19-20). Whether consent was obtained before or after the FCC added the "written" requirement on October 16, 2013, and whether the calls were placed before or after the FCC's amendment, Salam's lawsuit will ultimately turn on whether Lifewatch obtained some form of "prior express consent" from each and every putative class member, by any one of myriad ways, prior to placing an allegedly unauthorized call. Those highly individualized factual questions regarding consent necessarily predominate over any common issues of law or fact that may exist. Moreover, the proposed class lacks ascertainability, and other superior methods of adjudicating the claims are available. For any one or more of these reasons, Salam has pleaded a class that is facially uncertifiable. The Court should therefore strike Salam's class allegations pursuant to Rule 12(f) and Rule 23.

### A. The Putative Class Is Not Ascertainable.

Before a class may be certified, the class must be ascertainable. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). For a class to be sufficiently defined, one must be able to "ascertain" the identity of the class members "by reference to objective criteria." *Id.* Where the determination of who is in the class would require the court to "delve into issues of liability," the class is not ascertainable, and class certification is improper. *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557-58 (C.D. Cal. 2012) (internal citation and quotation

omitted); *see also Ostler v. Level 3 Commc'ns, Inc.*, No. IP 00-0718-C H/K, 2002 WL 31040337, at *2 (S.D. Ind. Aug. 27, 2002) ("Where such a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition.").

Salam's proposed class—individuals with cellular phones to whom Lifewatch or its supposed agents allegedly placed telemarketing calls "without prior express (written) consent"— is inherently unascertainable and therefore incapable of certification. There are myriad ways in which potential class members may have voluntarily provided consent (whether written or not), under hundreds of different circumstances, requiring individual fact inquiries. For example, the alleged recipients of Lifewatch telemarketing calls may have provided their "prior express consent" by "e-mail, website form, text message, telephone keypress, or voice recording," *see* 27 F.C.C.R. at 1843-44, or through other more traditional ways for providing "written consent." Individual fact inquiries regarding each putative class member's consent will dwarf any potential common issues, rendering the class unascertainable. *See, e.g.*, *Gannon*, 2013 WL 2450199, at *2-3 (denying certification for lack of ascertainability where the facts of the case would require the court to hold "mini-trials" to determine who consented to receiving text messages); *Machesney v. Lar-Brev of Howell, Inc.*, 292 F.R.D. 412, 430 (E.D. Mich. 2013) (denying certification for lack of ascertainability where class definition including only those with statutory standing would require "individualized determination[s] in order to ascertain the members of the class); *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558-59 (C.D. Cal. 2012) (concluding that class was unascertainable because the proposed class definition required determining who consented to receive advertisements).

In fact, Salam's proposed class is an unascertainable "fail-safe" class that is *per se* incapable of certification. A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825-26 (7th Cir. 2012). Courts routinely reject certification of classes based on "fail-safe" class definitions that impermissibly base class membership on the ability to bring a successful claim on the merits. *See Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming denial of class certification where the proposed "definition, if allowed, would result in a 'fail-safe' class, a class which would be bound only by a judgment favorable to plaintiffs but not an adverse judgment") (internal quotation and citation omitted); *Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 487 (C.D. Ill. 2007) (denying certification based upon fail-safe class definition); *see also Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374, 378 n.2 (S.D. Ill. 2008) (recognizing that class certification must occur before a court may make any determination with respect to the merits of class claims).

Under Salam's proposed class definition, if a person provided consent to call his cellular phone, that person would not be a class member and would not be bound by the Court's judgment. Alternatively, if the Court determined that consent was not provided, the call's recipient would be deemed to be part of the class, immediately establishing liability. Salam's class definition therefore goes to the heart of whether each class member has a meritorious claim under the TCPA, precluding ascertainability and, therefore, certification. *See Sadowski v. Med1 Online, LLC*, No. 07-C-2973, 2008 WL 489360, at *3 (N.D. Ill. Feb. 20, 2008) (denying certification because the class definition "virtually mirrors the statutory language of the TCPA and would require the court to investigate—and the Defendants to provide evidence regarding— the relationship between each potential class member and the Defendants"); *G.M. Sign, Inc. v.*

*Franklin Bank, S.S.B.*, No. 06-C-949, 2007 WL 4365359, at *3 (N.D. Ill. Dec. 13, 2007) (rejecting TCPA class where "the proposed class definition improperly include[d] a component of a lack of defense, namely proof of express permission or invitation prior to the receipt of the fax advertisement").

### B.     Salam Cannot Satisfy the Requirements of Rule 23(a).

A class may be certified "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Even if a plaintiff can satisfy these four elements (numerosity, commonality, typicality, and adequacy), he must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b).  *Amchem Prods., Inc.*, 521 U.S. at 614; *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006).

### 1.     Salam Cannot Demonstrate Commonality Under Rule 23(a).

In order to establish commonality under Rule 23(a), Salam must demonstrate that the putative class's injuries "depend upon a common contention" that is "capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  This, Salam cannot do, for the same reason that he cannot meet the ascertainability requirement.  Because the issue of whether the putative class members provided Lifewatch with "prior express (written) consent" has no common answer and is therefore incapable of classwide resolution, the proposed class is improper.  Moreover, individualized fact questions regarding whether Lifewatch is vicariously liable for the acts of unnamed third-party telemarketers who allegedly placed calls on Lifewatch's behalf preclude certification.

a.   **Individualized Fact Questions Regarding Consent
Predominate Over Any Common Issues.**

Salam pleads several "common questions of law and fact" that supposedly dominate over
any issues affecting individual class members' claims, including "whether Lifewatch's conduct
constitutes a violation of the TCPA" and whether Salam and other putative class members are
entitled to actual, statutory, or treble damages.   (Compl. ¶ 26.)   Lifewatch, however, can be
liable to putative class members ***only*** if, *inter alia*, Lifewatch or its agents called putative class
members' cellular phones with an autodialer or prerecorded message or artificial voice ***without***
***the recipients' prior express [written] consent***.   *See* 47 U.S.C. § 227(b)(1)(A)(iii).   As noted
above, commonality does not and cannot exist because of the myriad ways in which potential
class members may have voluntarily provided express consent, written consent by "e-mail,
website form, text message, telephone keypress, or voice recording," *see* 27 F.C.C.R. at 1843-44,
or written consent through other more traditional ways for providing "written consent."

Courts hold that TCPA cases involving similar facts are not appropriate for class
certification based on the failure of commonality and predominance of individual issues.   *See,
e.g.*, *Gene & Gene, LLC*, 541 F.3d at 328 (denying class certification where fax numbers were
acquired over time through a variety of factually different scenarios requiring individual
inquiries concerning consent); *Balthazor v. Central Credit Servs., Inc*., No. 10-62435-CIV, 2012
WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) (denying certification because plaintiff failed to
meet her burden of establishing a method for class-wide proof of lack of consent); *Versteeg v.
Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (denying certification
where the TCPA claims would "require extensive individual fact inquiries into whether each
individual gave 'express consent'").

      **b.**      **Individualized Fact Questions Relating to Lifewatch's Alleged Relationships with Third-Party Telemarketers Preclude Certification.**

In addition to alleging that Lifewatch placed the unsolicited call to his cellular phone on or about December 12, 2013, Salam alleges—with no factual support—that unidentified third-party telemarketers placed unsolicited calls to his and other putative class members' cellular phones without consent. (*See, e.g.*, Compl. ¶¶ 20, 32.) Because vicarious liability under the TCPA depends on the specific relationship between Lifewatch and each third party who supposedly telemarketed on Lifewatch's behalf, Salam cannot satisfy Rule 23(a)'s commonality requirement.

On May 9, 2013, the FCC released a declaratory ruling regarding the standards for vicarious liability under the TCPA. The FCC held that a seller who uses third-party telemarketers to make calls on its behalf are not automatically liable for the third parties' TCPA violations but that the seller may be held vicariously liable under agency principles. *In re Joint Petition Filed by DISH Network, LLC, et al. for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6584-90 (May 9, 2013). Factual questions regarding, *inter alia*, whether a third-party telemarketer had access to information normally within the seller's exclusive control or had the authority to use the seller's trade name and whether the seller drafted or reviewed the telemarketer's script, knew that the telemarketer was violating the TCPA, or ratified the telemarketer's actions all bear on whether a seller can be held vicariously liable for a third-party telemarketer's TCPA violations. *See id.*; *see also Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, at *6 (N.D. Ill. Sept. 3, 2013) (concluding that "the existence and scope of an agency relationship . . . turns on numerous disputed issues of fact").

Courts consistently hold that class certification is inappropriate where individualized agency-related fact questions exist. *See, e.g.*, *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 585 (N.D. Ill. 2000) (denying class certification, in part, on grounds that whether third-party dealers were acting as defendant's actual or apparent agents created predominating individualized questions of fact); *O'Brien v. J.I. Kislak Mortg. Corp.*, 934 F. Supp. 1348, 1357 (S.D. Fl. 1996) (denying class certification of Truth-In-Lending Act claim, in part, on grounds that whether third parties were agents of the defendant created individualized questions of fact); *Hickey v. Great Western Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534, at *8 (N.D. Ill. Mar. 17, 1995) (denying class certification of deceptive trade practices claims due, in part, to "fact-intensive" agency issues). This Court should likewise deny certification here.

### 2. Salam Is Not an Appropriate Class Representative.

Rule 23(a)(4) requires that the named class representative be able to fairly and adequately represent and protect the interests of the class. First and foremost, the class representative must not have interests in conflict with, or "antagonistic" to, those of the class. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Courts find interests to be "antagonistic" where the class representative may be "more interested in maximizing the return to his counsel than in aggressively presenting the proposed class action." *Id.* at 95. Accordingly,

> a majority of courts . . . have refused to permit class attorneys, their relatives, or business associates from acting as the class representative . . . [due to] the possible conflict of interest resulting from the relationship of the putative class representative and the putative class attorney. Since possible recovery of the class representative is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members.

*Id.* at 90-91. The appearance of impropriety is the "primary factor mandating judicial inquiry." *Id.* at 91. Courts have shown little tolerance for arrangements that even suggest conflicts

involving class counsel. *See, e.g., Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 328-30 (N.D. Ill. 1993). In TCPA class actions, the class representatives' possible recovery is "dwarfed" by potential attorneys' fees, and courts recognize that that disparity only exacerbates the potential conflicts of interest. *See In re Discovery Zone Securities Litig.*, 169 F.R.D. 104, 108 (N.D. Ill. 1996) (observing that "conflict of interest concerns are intensified when . . . the class representatives' possible recovery is dwarfed by potential attorney's fees").

Salam, when not attempting to serve as a class representative in TCPA cases, is himself a class action attorney who works for a small plaintiff's class action law firm, Siprut, P.C. ("Siprut"), located in Chicago, Illinois. *See* www.siprut.com/attorneybiographies_is.html (last visited Feb. 3, 2014). In fact, in just the last year, Salam has personally appeared as class counsel in eleven TCPA class actions in the Northern District of Illinois.[1] Lite DePalma Greenberg LLC ("Lite DePalma"), Salam's chosen class counsel, is also a small plaintiff's class action law firm. *See* www.litedepalma.com (last visited Feb. 3, 2014). In fact, Siprut and Lite DePalma are co-counsel in two other class action cases pending in the Northern District of Illinois, where they are currently working together in efforts to acquire and split millions of dollars in legal fees.[2] Given the ongoing business and financial relationship evidenced by those two pending cases, an objective observer could rightfully ask whether the two firms have also made legal referrals to

---

[1] *See In re: Zydus Unsolicited Fax Litig.* (1:13-cv-03105); *North Suburban Chiropractic Clinic, Ltd. v. Med-On-Call, LLC* (1:13-cv-06890); *North Suburban Chiropractic Clinic, Ltd. v. Med-IQ, LLC* (1:13-cv-06891); *North Suburban Chiropractic Clinic, Ltd. v. Spectra Medical Consulting, Inc.* (1:13-cv-06893); *One Republic, Inc. v. Quaker State Commercial Fin., Inc.* (1:13-cv-06894); *North Suburban Chiropractic Clinic, Ltd. v. Rx Security, Inc.* (1:13-cv-06897); *Windows Plus, Inc. v. Premier Indus. Supply, Inc.* (1:13-cv-07070); *Windows Plus, Inc. v. Door Control Servs., Inc.* (1:13-cv-07072); *Absolute Architecture v. City Store Gates Mfg. Corp.* (1:13-cv-07166); *Absolute Architecture v. Flipside Prodigy, Inc.* (1:13-cv-07167); *Absolute Architecture, P.C. v. Granite Max, Inc.* (13-cv-07840); *Absolute Architecture, P.C. v. Gabby Invs., LLC* (1:13-cv-07865); *Stephan Zouras, LLP v. Short Term Loans L.L.C.* (1:13-cv-08388); *Feldman v. Scopely, Inc.* (1:13-cv-08889). The Court may take judicial notice of cases filed in the federal district court. *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

[2] *See In Re: Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.* (1:13-cv-09116); *Walker v. Nat'l College Athletic Ass'n* (1:13-cv-09117).

11

one another and whether any of those situations involved agreements to share future recovered legal fees. If so, such facts would further enmesh Salam with his attorneys here.

The class' interests are in maximizing recovery while minimizing costs. Salam, however, has an interest in "maximizing the return to his counsel," even if that comes out of the pockets of the other class members. Although Salam is technically not representing himself here, he cannot artificially disavow his active membership in the bar of plaintiffs' lawyers who rely on class actions—specifically TCPA class actions—to generate large fees to earn their livings. Nor can Salam deny the active, multi-million dollar financial relationship between Lite DePalma, his chosen class counsel, and Siprut, the law firm that pays his salary. As other courts in the Northern District of Illinois have observed, "[e]ven where the named plaintiff does not expect to share directly in the attorneys' fees, his business relationship with counsel may leave him more interested in maximizing the return to his counsel than in aggressively presenting the proposed class action." *In re Discovery Zone Securities Litig.*, 169 F.R.D. at 109 (citing *Susman*, 561 F.2d at 95) (disqualifying class representative who had other business and referral relationship with class counsel); *see also Mowry v. JP Morgan Chase Bank*, No. 06 C 4312, 2007 WL 1772142, at *3 (N.D. Ill. June 19, 2007) (denying class certification where one class representative's brother was an attorney at one of the law firms representing the class and the other class representative was a close friend and former roommate of that same attorney).

Simply put, Salam is an inadequate class representative. Salam's membership in the circle of plaintiffs' lawyers and law firms who make their living by generating huge fees in class actions—not to mention his employer Siprut's ongoing work with class counsel Lite Depalma—arguably incentivizes Salam to generate a large attorneys' fee, rather than to insure that he and putative class members get their *de minimis* TCPA relief. This creates—at the very least—the

12

appearance of a conflict, which by itself is enough to disqualify Salam from serving as the class representative. *See Jaroslawicz*, 151 F.R.D. at 328 (finding class representative inadequate where class representative was a lawyer who split fees on other cases with one of the law firms representing the class, resulting an "impermissible conflict of interest").

### C.     Salam Cannot Satisfy the Requirements of Rule 23(b)(3).

Even if Salam could satisfy Rule 23(a)'s ascertainability, commonality, and adequacy requirements—and he cannot—his attempt to certify the proposed class would still fail as a matter of law because he cannot satisfy the requirements of one of the two subsections of Rule 23(b) under which he is attempting to certify a class.

Rule 23(b)(3), which permits a class representative to seek monetary damages—the primary relief that Salam seeks—requires common issues to "predominate" over individual ones and that the class action mechanism be "superior to other available methods" for fairly and efficiently adjudicating the controversy. *See Dukes*, 131 S. Ct. at 2558. To determine whether a plaintiff can satisfy predominance and superiority, courts examine "the substantive elements of plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on those issues." *Reed v. Advocate Health Care*, No. 06-cv-3337, 2009 WL 3146999, at *4 (N.D. Ill. Sept. 28, 2009) (citing *Simer v. Rios*, 661 F.2d 655, 672-73 (7th Cir. 1981)). Here, Salam cannot satisfy predominance because individual questions of consent completely overwhelm any alleged common issues. Likewise, Salam cannot show that a class action is the superior method of adjudicating the putative class members' claims.

### 1.     Common Questions of Law or Fact Do Not Predominate.

Rule 23(b)(3) requires Salam to demonstrate that "questions of law or fact common to class members *predominate* over any questions affecting individual class members." Fed. R. Civ. P. 23(b)(3) (emphasis added). Although similar to Rule 23(a)'s commonality requirement,

13

Rule 23(b)(3)'s predominance requirement is "far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gene & Gene, LLC*, 541 F.3d at 326, 329 (reversing TCPA class certification because plaintiff "failed to advance any viable theory employing generalized proof"). In evaluating predominance under Rule 23(b)(3), a court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether those issues are common to the class or will result in the degeneration of the case into a series of individual trials. *Id.* "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).

The substantive issue controlling the outcome of this case is whether putative class members received calls on their cellular phones without their prior express (written) consent. As described above, this inquiry turns on the various circumstances unique to each putative class member's interactions with Lifewatch and the myriad of methods by which members may have consented. Resolving this substantive issue will necessarily degenerate into "a series of individual mini-trials to determine the population of the class and to determine liability." *See Jamison*, 290 F.R.D. at 107. Under these circumstances, predominance does not exist, and the Court therefore cannot certify the proposed class. *See id.*; *G.M. Sign, Inc.*, 2011 WL 248511, at *8-10 (holding that consent issues predominated over common issues, precluding certification of a TCPA class); *Versteeg*, 271 F.R.D. at 674 (denying certification where the TCPA claims would "require extensive individual fact inquiries into whether each individual gave 'express consent'"). Individualized questions of fact regarding whether Lifewatch can be held vicariously liable for the acts of the unnamed third-party telemarketers who allegedly placed unsolicited

14

calls to putative class members also predominate over any common issues of fact or law that may exist. *See supra* Section III.B.1.b.

## 2. A Class Action Is Not the Superior Method of Adjudication.

In an effort to meet Rule 23(b)(3)'s superiority requirement, Salam asserts that the damages he and other potential class members suffered are "relatively small compared to the burden and expense that would be required to individually litigate their claims against Lifewatch." (Compl. ¶ 30.) Salam fails to recognize, however, that Congress has already addressed this very issue.

"The drafters [of the TCPA] recognized that damages from a single violation would ordinarily amount only to a few pennies [of actual damages], and so believed that the $500 minimum damage award would be sufficient to motivate private redress of a consumer's grievance through a relatively simple small claims court proceeding, without an attorney." *Levine v. 9 Net Ave., Inc.*, No. A-1107-00T1, 2001 WL 34013297, at *1 (N.J. Super. App. Div. June 7, 2001); *see also Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (explaining that the TCPA is designed to provide adequate incentive for an individual plaintiff to bring suit). In other words, "[a] class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited . . . advertisements." *Forman*, 164 F.R.D. at 405; *see also Murphey v. Lanier*, 204 F.3d 911, 913 (9th Cir. 2000) (concluding that TCPA claims should be treated as "small claims best resolved in state courts"), *abrogated on other grounds by Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). Thus, even if Salam's rank speculation about the numerosity of the class members whom he seeks to represent were grounded in fact, it is nevertheless clear that Congress did not intend for plaintiffs' counsel to aggregate the claims of thousands of plaintiffs to generate huge potential awards and large attorneys' fees that shock the conscience. *See Kline v. Colwell, Banker, & Co.*,

508 F.2d 226, 234-35 (9th Cir. 1974) (explaining that potential damages awards that "shock the conscience" cannot be certified under Rule 23(b)(3)). Congress's actions are consistent with an intent to not further burden already hard-pressed Federal courts with exceedingly large, complex, expensive, and time-consuming litigation when more efficient, targeted state court actions are readily available to compensate true victims.

Because the TCPA provides adequate incentives and means for individuals to prosecute their claims, certification is not the superior method of adjudicating this case. *See Freedman v. Advanced Wireless Cellular Commc'ns., Inc.*, No. SOM-L-611-02, 2005 WL 2122304, at *2 (N.J. Super. Ct. June 24, 2005) (vacating TCPA class certification, noting the significant legislative history evidencing that class actions were not intended under the TCPA). The superior mechanism for resolving a TCPA claim is a simple, straight-forward individual lawsuit that allows for recovery by anyone truly impacted by a TCPA violation, not a massive, lawyer-driven class action spawning an award completely out of proportion to any harm the plaintiff suffered and windfall attorneys' fees. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003).

### D. Salam's Request for Certification Under Rule 23(b)(2) Is Meritless.

Salam also disingenuously seeks to certify the proposed class under Rule 23(b)(2), trying to cast his class action as one that is ***predominantly*** for injunctive relief. *See* Fed. R. Civ. P. 23(b)(2), Advisory Comm. Note (1966); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1186 (9th Cir. 2007). Before it can certify a Rule 23(b)(2) class, the Court must find that the ***predominant*** relief is injunctive and declaratory, while monetary damages are secondary. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001); *Dukes*, 509 F.3d at 1186. It is not sufficient that injunctive relief be among the remedies sought where the realities of litigation make clear that the suit was brought primarily for money damages. *Elliott v. ITT Corp.*, 150

16

F.R.D. 569, 576 (N.D. Ill. 1992). Rather, a plaintiff bears the burden of showing that monetary damages are merely incidental to a primary request for injunctive relief. *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 466 (S.D. Cal. 2007); *see also Ticor Title Ins., Co. v. Brown*, 511 U.S. 117, 121 (1994) (stating that there is "a substantial possibility" that actions seeking monetary damages are only certifiable under Rule 23(b)(3)).

Salam seeks statutory damages in the amount of $500 per negligent TCPA violation and $1,500 for each willful and/or knowing violation. (Compl. ¶¶ 36-37.) Given that Salam alleges that Lifewatch or its supposed agents made unsolicited calls to "thousands of wireless telephone numbers" (Compl. ¶ 20), the potential judgment in the case ranges in the millions to tens of millions of dollars, a number that shocks the conscience considering any actual damages that potential class members may have sustained. No court could seriously consider Salam's claim for millions of dollars of damages "incidental" to his request for injunctive relief arising from any alleged TCPA violations. The proposed class therefore cannot be certified under Rule 23(b)(2).

In summary, the putative class is impossible to ascertain, the individual question of express consent by each putative class member defeats commonality and predominance, Salam is not an appropriate class representative, and a class action is not the superior method of adjudicating the putative class's TCPA claims. Salam's class allegations (¶¶ 23-30) are therefore facially deficient, and the Court should strike them pursuant to Rule 12(f) and Rule 23.

## IV. THE COURT SHOULD DISMISS SALAM'S INDIVIDUAL TCPA CLAIM.

Salam's sparse allegations regarding his personal TCPA claim is insufficient to state a plausible claim against Lifewatch under federal pleading standards. Salam's unsupported, conclusory assertions regarding Lifewatch's supposed conduct are little more than cookie-cutter allegations that merely parrot the language of the TCPA, and, as such, they cannot survive a

motion to dismiss. Moreover, Salam does not plead any facts whatsoever to support that Lifewatch had an agency relationship with any entity that placed calls "on its behalf" and has therefore failed to state a claim for relief under the TCPA based on a theory of vicarious liability.

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, the complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation' of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the TCPA context in particular, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, ***might*** suggest that something has happened to her that ***might*** be redressed by the law." *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)) (emphasis original). Allegations that support only the "sheer possibility" that the defendant violated the TCPA "will not do." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Given the cookie-cutter nature of TCPA litigation in general, it is not surprising that courts in the Northern District of Illinois dismiss TCPA cases pursuant to Rule 12(b)(6). *See id.* at 985; *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430, at *6 (N.D. Ill. Sept. 23, 2013); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *4 (N.D. Ill. Dec. 18, 2012). Salam's Complaint—exactly the kind of complaint that the Supreme Court was concerned about when it decided *Twombly* and *Iqbal*—also fails to state a TCPA claim.

18

**A.    Salam Does Not Sufficiently Plead That the Alleged Call Was Made Using an Automatic Telephone Dialing System or an Artificial or Prerecorded Voice.**

Salam merely alleges legal conclusions regarding Lifewatch's supposed violation of the TCPA, which bars companies from placing unsolicited calls to cellular phones "using any automatic telephone dialing system or an artificial or prerecorded voice."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  Such allegations do not meet federal pleading standards.  Although Salam asserts that "Lifewatch made these calls . . . using equipment that had the capacity to store or produce telephone numbers to be called using random or sequential number generator" (Compl. ¶ 21), which is the definition of an automatic telephone dialing system, he offers no factual support for that conclusion.  As one federal court addressing this precise pleading defect explained, "it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'  Such a naked assertion need not be taken as true."  *Knutson v. Reply!, Inc.*, No. 10-CV-1267, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011).  The *Knutson* court further noted that the plaintiffs there, like Salam here, failed to provide any details about the matter of the calls except that they were allegedly solicitations about the defendant's business.  *See id.* (dismissing TCPA claim because plaintiff failed to properly plead one of the necessary elements).  Other courts similarly dismiss TCPA claims where plaintiffs provide "only a threadbare, 'formulaic recitation of the elements' of a TCPA claim."  *See, e.g.*, *Johansen*, 2012 WL 6590551, at *3.  This Court should do the same here.

**B.    Salam Does Not Allege Sufficient Details Regarding the Alleged Calls.**

The Court should also dismiss Salam's Complaint for failure to allege sufficient details regarding each call that Lifewatch or its supposed agents allegedly made to him.  *See Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *2 (N.D. Ill. Dec. 14, 2009)

19

(dismissing TCPA claims where plaintiff made specific allegations regarding some messages but also made only "broad, conclusory allegations regarding the 'numerous' further messages that he allegedly received"). Here, after vaguely describing one call that he received "[o]n or about December 12, 2013" (Compl. ¶ 12), Salam alleges that, "on information and belief, Lifewatch has made and continues to make phone calls to Plaintiff's and Class members' wireless phones" (*id.* at ¶ 19). Apparently, Salam does not actually know whether Lifewatch *did* place additional calls to his own cellular phone, and, as a result, he merely posits the *possibility*. Accordingly, he cannot identify when he received the possible subsequent calls, from what number he received the possible subsequent calls, or what the possible callers stated. The utter lack of any allegations relating to the supposed subsequent calls stretches the concept of liberal pleading beyond both logic and reason. Salam should not be allowed to litigate this case—particularly as a class action—unless he can offer some factual allegation to support his TCPA claims. *See Abbas*, 2009 WL 4884471, at *2.

## C. Salam's Complaint Contains No Allegations to Support a Vicarious Liability Theory.

To the extent that Salam is attempting to assert that Lifewatch should be held vicariously liable for unsolicited calls that unnamed telemarketers supposedly placed "on behalf of" Lifewatch, Salam utterly fails to state a claim for relief because he fails to allege any agency relationship between Lifewatch and the unnamed telemarketing companies. In order to establish vicarious liability under the TCPA for the unnamed telemarketers' alleged calls, Salam must demonstrate that Lifewatch, as the principal, controlled the telemarketers' calling campaign. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1984 (C.D. Cal. 2012) (explaining that TCPA liability can arise "vicariously" when the plaintiff can show that the defendant "controlled or had the right to control . . . the manner and means of the text message campaign that [the agent]

20

conducted"). "The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (applying Illinois law). A plaintiff must offer more than "conclusory statements" to support an agency theory of liability. *Sefton v. Toyota Mot. Sales U.S.A., Inc.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) (dismissing complaint where plaintiff alleged only that car dealership was "owned by, operated by, and [was] an agent of" defendant car manufacturer's sales unit). Accordingly, when a plaintiff's allegations and facts do not demonstrate that the alleged principal controlled the agent, a claim based on vicarious liability should be dismissed. *See Scheinman v. Martin's Bulk Milk Serv., Inc.*, No. 09 C 5340, 2011 WL 1399260, at *5 (N.D. Ill. Apr. 12, 2011) (dismissing personal injury claim against defendant trucking company because the facts did not "lead to the reasonable inference" that the company had the right to control the driver).

Crucially, Salam does not allege that Lifewatch in any way controlled or directed the unnamed telemarketers' work. He does not allege that Lifewatch authorized the unnamed telemarketers to act on its behalf, instructed the unnamed telemarketers to call Salam's cellular phone, or directed the way in which the unnamed telemarketers carried out the alleged calling campaign. In fact, Salam does not even make the conclusory allegation that the unnamed telemarketers actually *were* Lifewatch's agents. Because Salam offers no factual predicate to support the unpleaded conclusion that the unnamed telemarketers were Lifewatch's agents, his allegations are patently insufficient to establish Lifewatch's vicarious liability under the TCPA. *See Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 3542527, at *4 (N.D. Ill. Dec. 27, 2005) (dismissing securities fraud claim against investment company because plaintiffs had

21

"failed to allege, even in a conclusory manner, that the [defendant company] ha[d] the power to control [the investment advisor], which is an essential component of an agency relationship"); *see also Palm Beach Golf Ctr.–Boca, Inc. v. Sarris*, --- F. Supp. 2d ---, No. 12-80178-CIV, 2013 WL 5972173, at *7 (S.D. Fla. 2013) ("If a plaintiff's theory of recovery against a defendant [under the TCPA] is premised upon vicarious liability, it must be alleged in the complaint.").

Accordingly, for any one or more of the three reasons discussed above, Salam has failed to state a cause of action on his individual TCPA claim against Lifewatch, and the court should therefore dismiss his Complaint with prejudice pursuant to Rule 12(b)(6).

## V.        CONCLUSION

For the reasons set forth above, Defendant Lifewatch, Inc., respectfully requests that this Court strike Plaintiff's class allegations pursuant to Rule 12(f) and Rule 23 and dismiss Plaintiff's Complaint for failing to state a claim pursuant to Rule 12(b)(6).

Dated: February 18, 2014                                              Respectfully submitted,


                                                                    By:  /s/Christine E. Skoczylas


Patrick Cotter (6202681)
Mark P. Miller (6191128)
Christine E. Skoczylas (6293811)
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
Tel:  (312) 357-1313
Fax:   (312) 759-5646
pcotter@btlaw.com
mmiller@btlaw.com
cskoczylas@btlaw.com
*Attorneys for Defendant Lifewatch, Inc.*

## **CERTIFICATE OF SERVICE**

I, Christine E. Skoczylas, an attorney, certify that a copy of the foregoing **Defendant's Memorandum in Support of Its Motion to Strike Plaintiff's Class Allegations and to Dismiss Plaintiff's Complaint** was filed electronically and was served upon the following by CM/ECF on this 18th day of February, 2014:

Katrina Carroll – kcarroll@litedepalma.com

/s/Christine E. Skoczylas