UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------------------------------- x

ISMAEL SALAM, individually and on behalf of all
others similarly situated,

                                     Plaintiffs,

      v.

LIFEWATCH, INC., a New York corporation

                                   Defendants.

-------------------------------------------------------------------------------- x

Case No.: 1:13-cv-9305

Hon. Charles R. Norgle, Sr.

## DEFENDANT LIFEWATCH INC.'S OPPOSITION TO PLAINTIFF'S FRCP R. 23 MOTION

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………..………………………………………………..I

TABLE OF AUTHORITIES……………………………...........................................II-VI

I.    PRELIMINARY STATEMENT…………………………………………………………1

               1.    Ascertainability……………………………………………………………2

               2.    Numerosity…………………………………………………………...3

               3.    Commonality………………………………………………………………3

               4.    Predominance……………………………………………………...4

               5.    Adequacy…………………………………………………………4

II.    FACTS…………………………………………...…………………...............................4

I.    Legal Arguments………………………………………………………………………7

           1.    FRCP R. 23 Certification Standard………………………………...7

               A. Ascertainability…………………………………………………9

                    Proposed Definition…………………………………………...12

               B. Numerosity…………………………………………………...15

                C. Commonality…………………………………………………17

                D. Predominance…………………………………………………...18

                E. Adequacy……………………………………………………20

III.    CONCLUSION……………………………………………………………...………23

## TABLE OF AUTHORITIES

Cases

*Absolute Architecture v. City Store Gates Mfg. Corp.*
(1:13-cv-07166)………………………………………………………………….21

*Absolute Architecture v. Flipside Prodigy, Inc.*
(1:13-cv-07167)………………………………………………….…………21

*Absolute Architecture, P.C. v. Granite Max, Inc.*
(13-cv-07840)……………………………………………………..………..21

*Absolute Architecture, P.C. v. Gabby Invs., LLC*
(1:13-cv-07865)…………………………………………...……………..21

*Alliance to End Repression v. Rochford,*
565 F.2d 975, 977 (7th Cir. 1977)……………………………………...………12

*Balschmiter v. TD Auto Fin. LLC,*
303 F.R.D. 508 (E.D. Wis. 2014)……………………………….…………12, 13

*Balthazor v. Central Credit Servs., Inc.,*
No. 10-62435-CIV, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012)………...19

*Birchmeier v. Caribbean Cruise Line, Inc.,*
302 F.R.D. 240 (N.D. Ill. 2014)…………………………………………...…9, 10

*Brey Corp. v. LQ Mgmt. LLC,*
2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014)……………………...…11

*Buonomo v. Optimum Outcomes, Inc.,*
2014 U.S. Dist. LEXIS 33973, at *21 (N.D. Ill. Mar. 17, 2014)…………………..9

*Chapman v. Wagener Equities, Inc.,*
2014 U.S. Dist. LEXIS 16866 (N.D. Ill. Feb. 11, 2014)………………………15, 16

*Charvat v. EchoStar Satellite, LLC,*
630 F.3d 459, 468 (6th Cir. 2010)………………………………….………14

*Connelly v. Hilton Grand Vacations Co., LLC,*

II

   294 F.R.D. 574, 577 (S.D. Cal. 2013)…………………………………………18

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970, 983 (9th Cir. 2011)………………………………………………2

*Federal Trade Commission, et al. v Lifewatch, Inc., et al.,*
   15-cv-5781, United States District Court,
   Northern District of Illinois, Eastern Division…………………………....…1, 23

*Feldman v. Scopely, Inc.*
   (1:13-cv-08889)……………………………………………………………..21

*Gene & Gene, LLC,*
   541 F.3d at 328…………………………….………………………………..19

*Gomez v. Illinois State Bd. of Educ.,*
   117 F.R.D. 394, 397 (N.D.Ill. 1987)…………………………………………..9

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011, 1022 (9th Cir. 1998)……………………………..…………18

*In re Discovery Zone Securities Litig.,*
   169 F. R.D. 104, 109 (N.D. Ill. 1996)  (citing *Susman*, 561 F.2d at 95)……..20, 21

*In re Dish Network, LLC,*
   28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013)…………………………..14

*In Re: Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*
   (1:13-cv-09116)……………………………………………………….….21

*In re: Zydus Unsolicited Fax Litig.*
   (1:13-cv-03105)……………………………………………………………..21

*Jamison v. First Credit Servs.,*
   290 F.R.D. 92, (N.D. Ill. 2013)…………………………......…………15, 16, 17, 18, 22

*Jaroslawicz v. Safety Kleen Corp.,*
   151 F.R.D. 324, 328-30 (N.D. Ill. 1993)……………………………………..20, 22

*Keele v. Wexler,*
   149 F.3d 589, 594 (7th Cir. 1998)…………………………………………..17

*Life Alert Emergency Response, Inc. v Lifewatch, Inc.,*

601 F. App'x 469, 471 (9th Cir.)………………………………………..……13

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802, 811 (7th Cir. Ill. 2012)…………………………………………...1, 8

*Mowry v. JP Morgan Chase Bank,*
    No. 06 C 4312, 2007 WL 1772142, at *3 (N.D. Ill. June 19, 2007)……………..22

*Muro v. Target Corp.,*
    580 F.3d 485, 492 (7th Cir. 2009)…………………………………………...…17

*North Suburban Chiropractic Clinic, Ltd. v. Med-On-Call, LLC*
    (1:13-cv-06890)…………………………………………………………………..21

*North Suburban Chiropractic Clinic, Ltd. v. Med-IQ, LLC*
    (1:13-cv-06891)…………………………………………………………………..21

*North Suburban Chiropractic Clinic, Ltd. v. Spectra Medical Consulting, Inc.*
    (1:13-cv-06893)…………………………………………….……………………21

*North Suburban Chiropractic Clinic, Ltd. v. Rx Security, Inc.*
    (1:13-cv-06897)…………………………………………….……………………21

*One Republic, Inc. v. Quaker State Commercial Fin., Inc.*
    (1:13-cv-06894)…………………………………………………….………21

*Oshana v. Coca-Cola Co.,*
    472 F.3d 506, 513 (7th Cir. 2006)…………………………..………………………7, 8, 12

*Reed v. Advocate Health Care,*
    268 F.R.D. 573, 578 (N.D. Ill. 2009)…………………………………………8

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,*
    281 F.R.D. 327, 332 (E.D. Wis. 2012)……………………………………….……16

*Rosario v. Livaditis,*
    963 F.2d 1013, 1018 (7th Cir. 1992)………………………………………...…17

*Sandusky Wellness Ctr. LLC v. Medtox Sci., Inc.,*
    2014 U.S. Dist. LEXIS 107266 (D. Minn. Aug. 5, 2014)………………………..…11

*Sher v. Raytheon Co.,*

419 Fed. Appx. 887 (11th Cir. Fla. 2011)……………………………………………6

*Simer v. Rios,*
 661 F.2d 655, 672 (7th Cir. 1981)……………………………………….....18

*Soto v. Superior Telcoms., Inc.,*
 No. 10cv135-IEG, 2011 U.S. Dist. LEXIS 145205, at *16-17
 (S.D. Cal. Dec. 15, 2011)……………………………………………………18

*State of Indiana v. Lifewatch, et al.,*
 docketed in the Superior Court of Marion County………………………….....13

*Stephan Zouras, LLP v. Short Term Loans L.L.C.*
 (1:13-cv-08388)…………………………………………………………………..21

*Susman v. Lincoln Am. Corp.,*
 561 F.2d 86, 90 (7th Cir. 1977)…………………………………….....20, 21

*Szabo v. Bridgeport Machs., Inc.,*
 249 F.3d 672, 676 (7th Cir. 2001)………………………………...……………1

*U.S. v. Wood,* 925 F.2d 1580, 1582
 (7th Cir. 1991)………………………………………………………………….21

*Versteeg v. Bennett, Deloney & Noyes, P.C.,*
 271 F.R.D. 668, 674 (D. Wyo. 2011)…………………………………..………19

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.,*
 274 F.R.D. 229, 237 (S.D. Ill. 2011)………………………………………11, 19

*Wal-Mart Stores, Inc. v. Dukes,*
 131 S. Ct. 2541, 2551 (2011)……………………………………………………8

*Williams v. Chartwell Fin. Servs., Ltd.,*
 204 F.3d 748, 760 (7th Cir. 2000)………………………………..……………17

*Windows Plus, Inc. v. Premier Indus. Supply, Inc.*
 (1:13-cv-07070)………………………………………………………..………21

*Windows Plus, Inc. v. Door Control Servs., Inc.*
 (1:13-cv-07072)……………………………………………………...………21

## Statutes

15 U.S.C. §§ 53(b) and 57(b)……………………………………………………...………1

15 U.S.C. §§ 6101-6108……………………………………………………………...……1

15 U.S.C. § 45(a)……………………………………………………………………..……1

16 C.F.R. Part 310………………………………………………………………………...1

47 C.F.R. § 64.1200(f)(11)…………………………………………………………………14

47 C.F.R. § 64.1200(f)(9)……………………………………………………...……………14

47 U.S.C. 227 § (b)(1)(A)……………………………………………………………..…18

Fed R. Civ. P. 23(a)………………………………………………………………….……7

Fed R. Civ. P. 23(a)(2)……………………………………………….……………….…...17

Fed R. Civ. P. 23(a)(4)………………………………………………………………...…20

Fed. R. Civ. P. 23(b)(3)……………………………………………………………….7, 8

FRCP. R. 23………………………………………………………………………1, 2, 6, 7, 8, 9

TCPA…………………………………………………………….………4, 11, 12, 14, 15, 18, 19, 20, 21, 22

Defendant, Lifewatch, Inc., by their attorneys, opposes Plaintiffs' FRCP R. 23 motion for the reasons set forth below:

## I.    **Preliminary Statement**

In order to certify a class, it is incumbent upon plaintiff to show by a preponderance of the evidence that the proposed class meets the Rule 23 requirements. Plaintiff has failed to do so. Given that plaintiff largely opted against conducting discovery in this case, the "facts" set forth in plaintiff's moving papers are based entirely upon declarations filed in another case[1] involving different allegations and different statutes.[2] In essence, plaintiff has cherry-picked unsubstantiated allegations from another case and repackaged them as "facts" that he improperly asks the court to consider in this case. But, depositions of the declarants (conducted in the other case) -- which plaintiff has not cited or mentioned in his moving papers -- revealed that: a) the declarants had no basis for making those assertions; b) the declarants were wrong; or c) the declarants were biased. Simply put, there is no factual support for plaintiff's statement that Lifewatch was engaged in a "robo-calling scheme" or that there was an agency relationship between Lifewatch and its outside sellers. Thus, plaintiff has utterly failed to adduce facts tending to show that there was a common pattern and practice that could affect the class as a whole.[3] And, plaintiff has utterly failed to demonstrate by a preponderance of the evidence that the Rule 23 factors have been met.

---

[1] *Federal Trade Commission, et al. v Lifewatch, Inc., et al.*, 15-cv-5781, United States District Court, Northern District of Illinois, Eastern Division.

[2] The statutes at issue in the FTC action are: 15 U.S.C. §§ 53(b) and 57b; 15 U.S.C. §§ 6101-6108; 15 U.S.C. § 45(a); and 16 C.F.R. Part 310. None of these statutes are at issue in the case at bar.

[3] *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. Ill. 2012) ("On issues affecting class certification...a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must receive evidence . . . and resolve the disputes before deciding whether to certify the class.") (internal citations omitted); *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)

By way of background, Lifewatch is a decades-old New York company that provides high-quality products and services to elderly, seriously ill, and disabled individuals. (Exhibit A, Baker Declaration). By simply pressing a button on a Lifewatch medical alert device, Lifewatch's customers have immediate access to emergency services. Id. Lifewatch does not telemarket and does not generate, create, or circulate recorded telephonic marketing messages. Id. Lifewatch entered into Purchase Agreements with various outside sales companies. Pursuant to these Purchase Agreements, the outside sales companies originate customer accounts (through radio, television, internet, and print advertising, as well as telemarketing) and then offer to sell those accounts to Lifewatch--and others--on a non-exclusive basis. Id. The outside sales companies that sign these Purchase Agreements warrant and covenant that they do not and will not violate any state or federal telemarketing laws, or any other laws in originating customer accounts. Id. Before buying any customer accounts from the outside sales companies, Lifewatch also obtains affidavits from the outside sales companies wherein they affirm, among other things, that they strictly comply with all state and federal telemarketing laws. Id.

As set forth in more detail below, plaintiff cannot establish that the threshold requirements of FRCP. R. 23 have been met. This is because:

**1. Ascertainability**: To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria. Here, class membership is simply impossible to ascertain. Neither Lifewatch nor plaintiff has any information relative to who, if anyone, received pre-recorded messages (by way of an automated telephone dialing system) on their cellular phones. (Exhibit A, Baker Declaration).

---

("Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23."); *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011); (Holding that district courts are "required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole.")

Outside sellers obtained customer accounts and then sold them to Lifewatch -- and other medical alert companies that compete against Lifewatch -- using various methods. Id. The outside sellers warranted and covenanted that they were not obtaining customer accounts through violative telemarketing practices. Id. If, hypothetically, an outside seller from which Lifewatch purchased 10 customer accounts made 1000 violative telephone calls, Lifewatch would only have contact information for the 10 customers it purchased from the outside seller. Id. Moreover, Lifewatch would have *no information* as to whether those 10 customers were originated by the outside sellers through telemarketing or, for instance, because the customer was responding to a print advertisement or television advertisement. Id.

2. **Numerosity**: Contrary to plaintiff's assertion, there is no evidence of a causal link between Lifewatch and "nearly two million pre-recorded calls per day, six days per week." And, there is no evidence that Lifewatch added customers to its customer base through the use of violative telemarketing practices. Again, plaintiff has opted against conducting discovery, and instead, bases its arguments on debunked allegations from another case – in support of his numerosity argument – and urges the court to "use common sense." In any event, there is insufficient evidence to demonstrate that the numerosity requirement can be established.

3. **Commonality**: Contrary to plaintiff's argument, there is no standardized conduct toward members of the proposed class. Rather, dozens of outside sellers obtained customer accounts and sold them to Lifewatch -- and other competitors within the same business industry -- using a variety of different marketing methods. Because Lifewatch did not telemarket, Lifewatch can only be held liable, if at all, through a finding of vicarious liability. Vicarious liability depends upon the specific relationship between Lifewatch and each third party from whom Lifewatch purchased customer accounts. The fact sensitive agency analysis (e.g. extent of control,

3

supervision, and involvement in day-to-day business affairs) vis-à-vis Lifewatch and the numerous outside entities that may have made telemarketing calls to plaintiff and the putative class members will create inevitable and overwhelming confusion for the jury and prevent efficient trial management.

**4. Predominance:** Whether the predominance requirement can be met is outcome determinative in TCPA litigation. Here, individualized inquiries would be required to determine, among other things: 1) whether and when members of the class provided prior express consent; 2) which of the outside sellers called which members of the class; and 3) which, if any, outside sellers had an agency relationship with Lifewatch.

**5. Adequacy:** Plaintiff cannot demonstrate adequacy inasmuch as there is a multi-million dollar financial relationship between Lite DePalma, plaintiff's chosen class counsel, and Siprut, the law firm that pays his salary. Moreover, his father, not he, pays the bill for the cellular phone that was allegedly called by an unknown entity.

## II.    Facts

Lifewatch is a decades-old, New York corporation with its principal place of business in New York. (Exhibit A, Baker Declaration). Lifewatch provides personal emergency response devices and services to elderly, seriously ill, and disabled individuals. Id. Salam's complaint is predicated on a single call he alleges was violative of the TCPA and which was allegedly made to him in December 2013. R. Doc. 1 ¶ 12.

Lifewatch did not and does not make or initiate telemarketing calls. Nor does Lifewatch create, generate, or circulate recorded telephonic marketing messages. (Exhibit A, Baker Declaration). Rather, at all relevant times, Lifewatch entered into Purchase Agreements with third party companies, and pursuant to those purchase agreements, Lifewatch purchased

4

customer accounts. Id. The Purchase Agreements followed the form attached as Attachment 1 to the Baker Declaration (the "Exemplar"). Id. Under the Purchase Agreements, the third party outside sellers sold contracts for the provision of personal emergency devices and supporting services for the vendors' own accounts on a non-exclusive basis. *See* Exemplar, ¶¶ 1(a); 1(c); 4.4. And, they represented and warranted that the customer accounts offered for sale to Lifewatch were procured in compliance with all of the applicable laws including the Telephone Consumer Protection Act. *See* Exemplar, ¶ 1(c); ¶ 4.2; ¶ 6.6; ¶ 6.7. Lifewatch insists that in conjunction with signing the Purchase Agreement -- wherein the outside company warrants and covenants that it will not engage in unlawful activities, including violative telemarketing practices -- each third party company signs an affidavit wherein it affirms that, among other things, they strictly comply with all state and federal telemarketing laws. (Attachment 2, Affidavit template). Further, the third parties sold personal emergency devices and supporting services without any right to compel Lifewatch to supply those devices or services to the customers of the third parties. *See* Exemplar, ¶ 1(a); ¶5.1; ¶5.2. Indeed, the third party companies regularly sold customer accounts to Lifewatch's direct competitors. (Exhibit A, Baker Declaration).

As is evident from a review of the chart below, the "facts" set forth in plaintiff's moving papers are incorrect and inherently untrustworthy and must be disregarded[4]. Moreover, the "facts" pertain to conduct that allegedly occurred before October 13, 2013 – the "start date" included within plaintiff's proposed class definition. Thus, the court cannot conduct the requisite

---

[4] Declarations from the FTC litigation that have been submitted by plaintiff must be stricken or excluded as: a) there is no foundation linking the complained of acts to Lifewatch; and b) references to Lifewatch within the declarations constitute inadmissible hearsay.

5

"rigorous analysis" relative to whether there was a common pattern and practice that could affect the class as a whole[5].

| "Facts" Presented by Plaintiff in His Moving Papers | Actual Facts |
|---|---|
| "One telemarketer stated during a conversation with a consumer that the initial outbound call containing the pre-recorded message is generated by a main PBX server and the company "cycles through "around 10,000 numbers a day. | The "telemarketer" indicated that it was not "affiliated with Lifewatch whatsoever." Plaintiff's Exhibit A, FTC PX 1, Att. XX at pp. 5-6.<br><br>The consumer lied about seeing "Lifewatch" on her caller identification. (Exhibit B, Mey deposition, pp. 71-76). |
| "Another telemarketer, which provided its services *solely* to Lifewatch sent out nearly 2 million calls per day, six days per week, to consumers" | A receiver appointed by the United States District Court for the District of Florida testified that the "telemarketer" did **not** provide services solely to Lifewatch, and in fact there is evidence that it provided services to approximately 7 other entities. (Exhibit C, Kane deposition, pp.12-16) |
| "Leslie Steinmetz, who helped Lifewatch develop new business, including through the use of telemarketing, confirmed in a declaration that Lifewatch knowingly used telemarketers, and that robo-calls were being used by telemarketers to sell Lifewatch's medical alert systems. Mr. Steinmetz further declared that Lifewatch had every intention of continuing to use robo-calling as long as it could in order to obtain new customers." | Although Steinmetz's declaration asserts that certain third party entities were engaged in robocalling, he admits he had no personal knowledge of this. Exhibit D, Steinmetz deposition, p. 68:3-10. When pressed, Steinmetz effectively conceded that his assertion was based on hearsay and speculation. Exhibit D, Steinmetz deposition., p. 72:3-8; 72:17-25. Instead, his "knowledge" of this was based on what he was told by the principals of two of Lifewatch's chief competitors and conjecture. Exhibit D, Steinmetz deposition., pp. 68:3-10; 72:3-8 and 17-25. Indeed, there are many reasons to question the veracity of Steinmetz and his declaration. Steinmetz admits that in December 2013, he sent a demand to Lifewatch asserting a claim for what might have been hundreds of thousands of dollars. Exhibit D, Steinmetz Dep., p. 66:15-25. He admits that during the time he was working with Lifewatch's competitor on the declaration, he was trying to negotiate his own relationship with that competitor. And Steinmetz was less than forthcoming about the process through which "he" drafted his declaration and did not recall receiving assistance from anybody with it. Exhibit D, Steinmetz deposition., p. 42:20-25. He claimed at first that it was *not* written by Ralph Loeb, counsel for Lifewatch's competitor, Exhibit E, Steinmetz deposition., p. 43:1-3, and he asserted that after he wrote it, he did not send it to anybody |

---

[5] Courts have noted that a failure to conduct a rigorous analysis to resolve material factual disputes relevant to Rule 23 requirements constitutes a defect in a class certification order. See, Newberg on Class Actions (5th ed. 2011) § 7:19, citing *Sher v. Raytheon Co.*, 419 Fed. Appx. 887 (11th Cir. Fla. 2011).

| | for review. Exhibit D, Steinmetz deposition., p. 43:15-17. He then changed his testimony and conceded that the document was drafted by Ralph Loeb. Ex. D, Steinmetz deposition, pp. 44:17-45:4. |
|---|---|
| "Michael Hilgar, the operations manager of the call center for Worldwide (and a defendant permanently enjoined from telemarketing in the *FTC v. Worldwide* litigation, *infra*), declared that "Lifewatch did control, oversee and supervise Worldwide in its efforts to obtain customer accounts for Lifewatch." | Mr. Hilgar also submitted a declaration in which he declared under penalty of perjury that Lifewatch did not control, oversee or supervise Worldwide in its efforts to obtain customer accounts.  (Exhibit E, Hilgar declaration). |

Moreover, the "facts" presented by plaintiff pertain solely to Lifewatch's relationship with a company called Worldwide Info Services. This relationship is not relevant inasmuch Mr. Salam allegedly received a violative telemarketing call on December 13, 2013 and Salam's proposed class definition is limited to post-October 2013 calls, whereas Lifewatch last did business with Worldwide Info Services in May 2013. (Exhibit A).

### III.    Legal Arguments

#### 1.  FRCP R. 23 Certification Standard

A party may pursue its claim on behalf of a class only if it can establish that the threshold requirements of Federal Rule of Civil Procedure 23 are met: (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]. Fed R. Civ. P. 23(a). If the moving party meets this initial burden, it must also show that the requirements of Rule 23(b)(3) are met. *See, Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). This means that

7

Salam must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fair and efficient adjudication of the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

In addition to the Rule 23 requirements, the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable. *See Oshana,* 472 F.3d at 513. Finally, while not an explicit requirement under Rule 23, the 7th Circuit has held that a class definition "must be definite enough that the class can be ascertained." *Oshana,* 472 F.3d at 513. To be ascertainable, "a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria." *Jamison v. First Credit Servs.,* 290 F.R.D. 92, 108 (N.D. Ill. 2013) (internal quotes and citations omitted). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The Court must engage in a "rigorous analysis," before finding that the prerequisites for certification have been satisfied. *Id.*

The 7th Circuit has applied a preponderance of the evidence standard for the Rule 23 requirements. *See Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802 (7th Cir. Ill. 2012) (stating that each disputed requirement of Rule 23 must be proven by a preponderance of the evidence). *See also Reed v. Advocate Health Care,* 268 F.R.D. 573, 578 (N.D. Ill. 2009) ("The court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action. Factual

8

determinations supporting Rule 23 findings must be made by a preponderance of the evidence.") (internal quotations and citations omitted).

Here, plaintiff cannot satisfy the requirements necessary for certification.

## A. Ascertainability

Before a class may be certified, the class must be ascertainable. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D.Ill. 1987). For a class to be sufficiently defined, one must be able to "ascertain" the identity of the class members "by reference to objective criteria." *Id.* And, "to satisfy ascertainability, the plaintiff must identify a method of determining class membership based on 'precise, objective criteria.'" *Buonomo v. Optimum Outcomes, Inc.*, 2014 U.S. Dist. LEXIS 33973, at *21 (N.D. Ill. Mar. 17, 2014) (citation omitted).

Salam's proposed class is inherently unascertainable and therefore incapable of certification. This is because the only entities that could possibly know whether violative telemarketing calls were made, and to whom, if anyone, violative calls were made, are the third party vendors – many of whom are now defunct. In his moving papers, plaintiff acknowledges that "in 2013 alone Lifewatch had contracts with at least 22 telemarketers." Yet, plaintiff inexplicably failed to conduct non-party discovery and so this critical information is not in the discovery record. Plaintiff has also failed to advance a single fact or rational argument in support of his conclusory claim that the proposed class can be ascertained. On the contrary, there is no objective way that a class could ever be ascertained.

The case of *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014), which also involved TCPA allegations, is instructive. In that case, where the court granted plaintiff's motion to certify the class, the court explained that it was satisfied that the class was sufficiently ascertainable *because*:

9

> In their original reply brief, plaintiffs said they had received spreadsheets in discovery from [defendant] containing a total of 174,930 unique telephone numbers of individuals who unquestionably received the free cruise call and were subsequently transferred to CCL or one of its call centers. Three months later, plaintiffs indicated in their supplemental reply brief that they now have a total of approximately 930,000 unique telephone numbers of class members who unquestionably received the free cruise calls. It appears that the list of 930,000 is an expansion of the list of 174,930 numbers of people receiving the calls described in the class definition (free cruise offer in exchange for taking political survey, prerecorded or artificial voice, between August 2011 and August 2012). The numbers, plaintiffs say, are those identified by Defendants as having received the transferred calls after the call recipients' completion of the free cruise survey. *Id.* 245 (internal citations and quotations omitted).

In the case at bar, however, and in stark contrast to *Birchmeier*, plaintiff does not have a list of telephone subscribers, nor has plaintiff proffered a proposed way to ascertain the identities of class members through application of precise, objective criteria. Pursuant to Lifewatch's Purchase Agreements with dozens of outside sellers, the outside sellers originated customer accounts and then offered to sell those accounts to Lifewatch—and others—on a non-exclusive basis. Lifewatch did not telemarket and did not exercise control over these outside companies' sales methods. Exhibit A. Instead, Lifewatch specified that the outside sales companies from which it purchased customers had to assure compliance with all applicable state and federal laws. Id. Thus, Lifewatch does not have records reflecting who, if anyone, received telemarketing calls. Id. If those records exist or ever existed they are scattered among dozens of outside sales companies[6] and plaintiff has failed to advance any plan, methodology, or intention relative to identifying, retrieving, or using these records. This is fatal to plaintiff's Rule 23 motion because it is well-established in this Circuit and across the country that "a plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be

---

[6] This fact was disclosed to plaintiff at the outset of discovery (through the parties Joint Discovery Plan) but plaintiff failed to pursue discovery with the outside sales companies.

successful." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 514 (E.D. Wis. 2014), citing *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. N.J. 2013). *See also Jamison v. First Credit Servs.*, 290 F.R.D. 92, 109 (N.D. Ill. 2013) ("Jamison's solutions are insufficient to identify the regular user of a particular wireless number at the specific point in time FCS placed calls that were violative of the TCPA. This identification is necessary...because only the person subscribing to the called number at the time the call was made would have a viable TCPA claim. Therefore, Jamison has failed to establish by clear and convincing evidence that the class is ascertainable.") Accordingly, the class is not ascertainable and the class cannot be certified.

The case at bar is akin to *Brey Corp. v. LQ Mgmt. LLC*, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014). In that case, in carrying out its advertising campaign in 2007 and 2008, LQ used two third-party vendors – a lead generator and a fax broadcaster – neither of whom were parties in the case. Neither of the vendors retained records of the fax numbers that received LQ's faxes in 2007 and 2008. The district court agreed that there was insufficient information from which to reliably ascertain class membership and thus ascertaining class membership would require thousands of mini-trials to determine (1) whether the person or entity received a fax from LQ, and (2) whether the fax was unsolicited. *See also Sandusky Wellness Ctr. LLC v. Medtox Sci., Inc.*, 2014 U.S. Dist. LEXIS 107266 (D. Minn. Aug. 5, 2014) (denying certification because "[plaintiff's] class definition is untenable because it would take individualized discovery to determine the threshold issue of who was 'sent' each of the thousands of faxes at issue.")

Further, plaintiff's reference to "Lifewatch adding approximately 8,000 new customers to its inventory each month" is not only baseless[7], but it is of no moment for the purposes of

---

[7] Plaintiff relies on a declaration from Lifewatch's competitor's CEO -- submitted in another case. Lifewatch's competitor's CEO says that he was told that "Lifewatch was obtaining 8,000 a month from telemarketing calls centers." The individual who is alleged to have made the statement has denied doing so. Exhibit F.

determining whether the class is ascertainable. *See Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011) (Denying certification and explaining "the Casino's call list is not a list of homogeneously unconsenting recipients. On the contrary, determining who has consented or not consented to the Casino's calls will depend on individual examination of the identity of the assignee for each number on the list at the time of each call. In truth, a myriad of individual inquiries will be necessary to arrive at a decision on the issue of liability, which renders this case unmanageable as a class action.") Given that Lifewatch's outside sellers used a variety of methods to originate customer accounts (e.g. radio advertising, internet advertising, television advertising, etc.), Lifewatch would not and does not have a list of homogeneously unconsenting recipients of pre-recorded telemarketing calls to cellular telephones.

*Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014) is also instructive. In that case, the court denied certification and explained that the class was not ascertainable because ascertainability is about "identifying and providing notice to the class members as individuals, not merely numbers on a list." Balschmiter proposed using a reverse-lookup provider to ascertain class members, and the court explained "this method presents a ...problem in light of the 7th Circuit defining "called party" -- *i.e.*, who may bring a claim under the TCPA -- as "the person subscribing to the called number at the time the call is made." In the case at bar, plaintiff has not proffered an expert to propose a method to ascertain class members, nor has plaintiff proposed such a method through counsel. And, given the facts in this case, there is no method that could be used to ascertain class members.

**Proposed Definition**

Ascertainability is "inexorably tied with the plaintiff's class definition." *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977) (noting that "whether the

description of a class is sufficiently definite to permit ascertainment of the class members must, of necessity, be determined on a case-by-case basis"); *Oshana v. Coca Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Thus, "courts must look to the class definition to determine, in part, whether the class is ascertainable." *Balschmiter v. TD Auto Fin. LLC, 303 F.R.D. 508, 514* (E.D. Wis. 2014). Here, plaintiff's proposed class definition -- which differs from the proposed class definition set forth in the complaint -- makes ascertainability impossible. Plaintiff has proposed:

> All individuals in the United States who received one or more phone calls directed to a telephone number assigned to a cellular service using an automated telephone dialing system or an artificial or prerecorded message made by, on behalf of, or for the benefit of Lifewatch from October 16, 2013 through the present.

The fatal flaws associated with this proposed definition[8] include, but are not limited to:

1) "Made by Lifewatch": It is undisputed that Lifewatch never made telemarketing phone calls, including calls "directed to a telephone number assigned to a cellular service using an automated telephone dialing system or an artificial or prerecorded message." (Exhibit A).

2) "Made on Behalf of Lifewatch": Given that Lifewatch entered into Purchase Agreements with dozens of outside sellers, determining whether an entity made phone calls directed to a telephone number assigned to a cellular service using an automated telephone dialing system or an artificial or prerecorded message ***on behalf of Lifewatch*** would require a fact sensitive agency analysis (e.g. extent of control, supervision, and involvement in day-to-day activities)[9]

---

[8] Plaintiff's proposed definition is also improperly fail-safe. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. Ill. 2012) ("the problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.")

[9] Given that plaintiff failed to conduct non-party discovery relative to agency and vicarious liability, plaintiff instead cites language from the trademark infringement case, *Life Alert Emergency Response, Inc. v Lifewatch, Inc.*, 601 F. App'x 469, 471 (9th Cir.). Notably, that case involved a motion for a preliminary injunction decided on limited evidence (some of which was hearsay) and involving allegations relative to activities in 2012. In *State of Indiana v. Lifewatch, et al.*, docketed in the Superior Court of Marion County (wherein the State alleged that Lifewatch is

13

vis-à-vis Lifewatch and each of the numerous outside entities that may have made telemarketing calls.

3) "Made for the Benefit of Lifewatch": This portion of the proposed definition is in direct conflict with the TCPA. There are two kinds of persons or entities addressed in the TCPA as having potential liability: telemarketers and sellers. The FCC's implementing regulations for the TCPA establish:

| "The term **telemarketer** means the person or entity **that initiates a telephone call or message** for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11) (emphasis added) | "The term **seller** means the person or entity **on whose behalf a telephone call or message is initiated** for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9) (emphasis added) |
|---|---|

In *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 468 (6th Cir. 2010), the court was faced with the issue of whether the TCPA and its accompanying regulations permitted a plaintiff to recover damages under Sections 227(b) and (c) from a defendant that did not place any illegal calls but whose independent contractors did so in attempts to sell the products and services of the defendant. The court invoked the doctrine of primary jurisdiction and referred the matter to the Federal Communications Commission ("FCC") to allow the agency to interpret certain provisions of the TCPA and its accompanying regulations. The FCC issued a declaratory ruling clarifying the circumstances under which a seller may be held vicariously liable under the TCPA based on federal common law principles of agency for violations of Sections 227(b) and (c). *In*

---

liable for offending calls made by telemarketers), the State of Indiana lost its summary judgment motion, in part, because the State was unable to show that there was no issue of fact as to whether: a) the telemarketers were Lifewatch's agents; and b) the offending calls would have occurred in the absence of purchase agreements between the outside sellers and Lifewatch. (See Exhibit G).

*re Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013). In its May 2013 order, the Federal Communications Commission (FCC) clarified that only a telemarketer (someone physically initiating the call) has direct liability under the TCPA, but that a seller could be held vicariously liable under federal common law principles of agency for TCPA violations when the calls were made on behalf of the seller. 28 F.C.C. Rcd. 6574 ¶1 (2013). *See also id.* at 6583 ¶27. Thus, there is no liability for an entity under the TCPA solely by virtue of that entity ***benefiting from*** a sale made in connection with a telemarketing call – as opposed to that entity initiating the call or the call being made on behalf of that entity.

4) "From October 16, 2013 through the present": As set forth in *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 109 (N.D. Ill. 2013) it is necessary in the 7th Circuit for plaintiff seeking class certification to identify the regular user of a particular wireless number at the specific point in time defendant is alleged to have placed calls that were violative of the TCPA. Plaintiff cannot do that here.

### B. Numerosity

Salam's numerosity argument is based entirely on the following inaccurate and misleading statements in his brief: 1) "Another telemarketer, which provided its services ***solely*** to Lifewatch sent out nearly 2 million calls per day, six days per week, to consumers"; 2) "Lifewatch was obtaining 8,000 a month from telemarketing calls centers; and 3) "One telemarketer stated during a conversation with a consumer that the initial outbound call containing the pre-recorded message is generated by a main PBX server and the company 'cycles through "around 10,000 numbers a day."'" But, as explained above, these statements have been discredited and must be ignored by the court. Thus, contrary to Salam's conclusory assertions,

evidence does not show and common sense does not dictate that "there is a class of at least 40 wireless consumers who received uninvited calls from Lifewatch during the Class Period."

Chapman v. Wagener Equities, Inc., 2014 U.S. Dist. LEXIS 16866 (N.D. Ill. Feb. 11, 2014), which plaintiff cites in his moving papers, is instructive as to the numerosity requirement. In that case, the court declared that "plaintiffs may not…rely solely on conclusory allegations as to the size of the class." Id. at * 25. The court conducted a rigorous analysis as to whether plaintiff affirmatively demonstrated by a preponderance of the evidence that the numerous requirement had been met. Ultimately, the court concluded that the numerosity requirement had been satisfied because:

> [Plaintiff] relies on the report of Robert Biggerstaff, its retained expert, to assert numerosity. Biggerstaff reviewed [defendant's third party vendor's] archived computer files and business records to determine how many successful transmissions of the WEI fax occurred on November 9 and 10, 2006. In particular, Biggerstaff reviewed [defendant's third party vendor's] hard drive, which contained archived files that referenced Wagener Equities. He concluded that those files showed 10,145 successful and error-free transmissions of the fax…[Defendant's third party vendor's] records establish that thousands of individuals received the fax. Id at *25-26. (internal quotations and citations omitted)

Further, in Jamison v. First Credit Servs., 290 F.R.D. 92, 104 (N.D. Ill. 2013), where the court nevertheless denied certification, the court agreed that the numerosity requirement had been satisfied because "Jamison has identified 2,887 telephone numbers that [defendant] used its dialing system to call that were obtained by skip trace methods and which are currently registered as a cellphone number.[10]"

---

[10] See also Reliable Money Order, Inc. v. McKnight Sales Co., Inc., 281 F.R.D. 327, 332 (E.D. Wis. 2012); ("A conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements" and holding that numerosity was satisfied where plaintiff demonstrated that [defendant's] form advertisement was successfully sent to 3,314 different fax numbers.

Here, however, and in stark contrast to plaintiffs in *Chapman* and *Jamison*, Salam has not identified any telephone numbers or telephone consumers that the court could use to evaluate whether numerosity is satisfied.

## C. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that "questions of law or fact common to the class" exist. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). Commonality requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000)). This means the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and...[the] claims are based on the same legal theory." *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013).

Here, notwithstanding plaintiff's contrary argument, there was no standardized conduct toward members of the proposed class. Rather, dozens of outside sellers obtained customer accounts and sold them to Lifewatch (and others within the same business industry) using a variety of different methods. (Exhibit A, Baker Declaration). Because Lifewatch did not telemarket, Lifewatch can only be held liable, if at all, through a finding of vicarious liability. Vicarious liability depends upon the specific relationship between Lifewatch and each third party from whom Lifewatch purchased customer accounts. The fact sensitive agency analysis will create inevitable and overwhelming confusion for the jury and will prevent efficient case management by the court. Further, the defenses that Lifewatch may raise against the plaintiff may be unique to him only (and not typical of defenses pertaining to other members of the class)

insofar as an outside seller that may have called Salam may not be the same outside seller that called another putative class member. And, Lifewatch's relationship with the outside seller that called Salam may have been different than the relationship with an outside seller that called another putative class member.

### D. Predominance

To analyze predominance, the court must focus on "the substantive elements of the [plaintiff's] cause of action and inquire into the proof necessary for the various elements." *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981). The elements of the TCPA claims alleged are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; and (3) without the recipient's prior express consent. 47 U.S.C. 227 § (b)(1)(A).

Here, Salam cannot demonstrate by a preponderance of the evidence that this litigation will not be impaired by resolution of individual questions. Even if Salam could establish common questions, numerous individualized issues relative to those questions preclude a finding of predominance. In his complaint, Salam sets forth the following "common questions:"

a. whether Lifewatch's conduct constitutes a violation of the TCPA;
b. whether the equipment Lifewatch (or someone on Lifewatch's behalf) used to make the calls in question was an automatic telephone dialing system as contemplated by the TCPA;
c. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);
d. whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Lifewatch's conduct; and
e. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution. (R. Doc. 1, ¶ 26).

To answer these questions, a fact-finder in a class-based trial would need to know, *inter alia*, which telephone consumers provided prior express consent;[11] which of the dozens of

---

[11] Notably, given that the Purchase Agreements and affidavits indicate that the third parties are warranting and covenanting that any telemarketing calls are compliant with the TCPA, the logical -- and unrefuted -- inference is

outside sellers called which telephone consumer; whether any of the dozens of outside sellers used autodialers; when calls were placed; and whether the calls resulted in a customer account that was ultimately sold to Lifewatch (or to one of its competitors). Evaluating these questions would necessitate myriad mini trials. And, critically, it would require evidence that neither plaintiff nor defendant possess, and which resides, if at all, with the dozens of non-parties that plaintiff never bothered to subpoena.

Whether the predominance requirement can be met is often outcome determinative in TCPA litigation. *See Jamison*, 290 F.R.D. at 106 (collecting cases and noting the "split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification").[12] Courts routinely hold that TCPA cases involving similar facts are not appropriate for class certification based on the failure of commonality and predominance of individual issues. *See, e.g.*, *Gene & Gene, LLC*, 541 F.3d at 328 (denying class certification where fax numbers were acquired over time through a variety of factually different scenarios requiring individual inquiries concerning consent); *Balthazor v. Central Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) (denying certification because plaintiff failed to meet her burden of establishing a method for class-wide proof of lack of consent); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (denying certification where the TCPA claims would "require extensive individual fact inquiries into whether each individual gave 'express consent'"). In the

---

that prior express written consent was indeed obtained by any third party companies that may have made outbound pre-recorded calls. Exhibit A.

[12] Thus, when prior express consent is at issue, predominance "primarily turns on whether a class-based trial on the merits could actually be administered," *Connelly v. Hilton Grand Vacations Co.*, LLC, 294 F.R.D. 574, 577 (S.D. Cal. 2013), or whether the case will devolve into myriad mini-trials on each class member's claim. *See Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. Mar. 11, 2011) (finding individual consent issue would predominate "burden[ing] the Court and the litigants with the arduous task of sifting through each putative class member's claim to determine its merits on a case-by-case basis").

case at bar, myriad individualized inquiries would be required in order to conduct a class-based trial, and thus the predominance requirement cannot be satisfied.

## E. Adequacy

Rule 23(a)(4) requires that the named class representative be able to fairly and adequately represent and protect the interests of the class. First and foremost, the class representative must not have interests in conflict with, or "antagonistic" to, those of the class. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Courts find interests to be "antagonistic" where the class representative may be "more interested in maximizing the return to his counsel than in aggressively presenting the proposed class action." *Id.* at 95. Accordingly,

> a majority of courts . . . have refused to permit class attorneys, their relatives, or business associates from acting as the class representative. The most frequently cited policy justification for this line of cases arises from the possible conflict of interest resulting from the relationship of the putative class representative and the putative class attorney. Since possible recovery of the class representative is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members.

*Id.* at 90-91. The appearance of impropriety is the "primary factor mandating judicial inquiry." *Id.* at 91. Courts have shown little tolerance for arrangements that even suggest conflicts involving class counsel. *See, e.g.*, *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 328-30 (N.D. Ill. 1993). In a TCPA class action, the class representatives' possible recovery is dwarfed by potential attorney's fees, and courts recognize that that disparity only exacerbates the potential conflict of interest. *See In re Discovery Zone Securities Litig.*, 169 F. R.D. at 108 (observing that "conflict of interest concerns are intensified when . . . the class representatives' possible recovery is dwarfed by potential attorney's fees").

Salam, when not attempting to serve as a class representative in TCPA cases, is a class action attorney who works for a small plaintiff's class action law firm, Siprut, P.C. ("Siprut"), located in Chicago, Illinois. Exhibit H, pp. 7-8, and 43:11-13. In fact, in just the last year, Salam himself has filed eleven TCPA class actions in the Northern District of Illinois alone.[13]    Lite DePalma is also a small plaintiff's class action law firm. *See* www.litedepalma.com. Siprut and Lite DePalma are co-counsel in another class action case in the Northern District of Illinois.[14]

The class' interests are in maximizing recovery while minimizing costs. Salam, however, has an interest in "maximizing the return to his counsel," even if that comes out of the pockets of the other class members. *See Susman*, 561 F.2d at 95. Although Salam is technically not representing himself here, he cannot artificially disavow his active membership in the bar of plaintiffs' lawyers who rely on class actions—specifically TCPA class actions—to generate large fees to earn their livings. Nor can Salam deny the active, multi-million dollar financial relationship between Lite DePalma, his chosen class counsel, and Siprut, the law firm that pays his salary. As other courts in the Northern District of Illinois have observed, "[e]ven where the named plaintiff does not expect to share directly in the attorneys' fees, his business relationship with counsel may leave him more interested in maximizing the return to his counsel than in aggressively presenting the proposed class action." *In re Discovery Zone Securities Litig.*, 169 F. R.D. 104, 109 (N.D. Ill. 1996) (citing *Susman*, 561 F.2d at 95) (disqualifying class

---

[13] *See In re: Zydus Unsolicited Fax Litig.* (1:13-cv-03105); *North Suburban Chiropractic Clinic, Ltd. v. Med-On-Call, LLC* (1:13-cv-06890); *North Suburban Chiropractic Clinic, Ltd. v. Med-IQ, LLC* (1:13-cv-06891); *North Suburban Chiropractic Clinic, Ltd. v. Spectra Medical Consulting, Inc.* (1:13-cv-06893); *One Republic, Inc. v. Quaker State Commercial Fin., Inc.* (1:13-cv-06894); *North Suburban Chiropractic Clinic, Ltd. v. Rx Security, Inc.* (1:13-cv-06897); *Windows Plus, Inc. v. Premier Indus. Supply, Inc.* (1:13-cv-07070); *Windows Plus, Inc. v. Door Control Servs., Inc.* (1:13-cv-07072); *Absolute Architecture v. City Store Gates Mfg. Corp.* (1:13-cv-07166); *Absolute Architecture v. Flipside Prodigy, Inc.* (1:13-cv-07167); *Absolute Architecture, P.C. v. Granite Max, Inc.* (13-cv-07840); *Absolute Architecture, P.C. v. Gabby Invs., LLC* (1:13-cv-07865); *Stephan Zouras, LLP v. Short Term Loans L.L.C.* (1:13-cv-08388); *Feldman v. Scopely, Inc.* (1:13-cv-08889). The Court may take judicial notice of cases filed in the federal district court. *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

[14] *See In Re: Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.* (1:13-cv-09116).

21

representative who had other business and referral relationship with class counsel); *see also Mowry v. JP Morgan Chase Bank*, No. 06 C 4312, 2007 WL 1772142, at \*3 (N.D. Ill. June 19, 2007) (denying class certification where one class representative's brother was an attorney at one of the law firms representing the class and the other class representative was a close friend and former roommate of that same attorney).

Simply put, Salam is an inadequate class representative. Salam's membership in the circle of plaintiffs lawyers and law firms who make their living by generating huge fees in class actions – not to mention his employer Siprut's ongoing work with class counsel Lite Depalma - arguably incentivizes Salam to generate a large attorneys' fee, rather than to insure that he and putative class members get their *de minimis* TCPA relief. This creates—at the very least—the appearance of a conflict, which by itself is enough to disqualify Salam from serving as the class representative. *See Jaroslawicz*, 151 F.R.D. at 328 (finding class representative inadequate where class representative was a lawyer who split fees on other cases with one of the law firms representing the class, resulting an "impermissible conflict of interest").

Moreover, Salam admits that his father, not he, pays for his cellular phone. Exhibit H, pp. 24-29. In *Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013), the court held that plaintiff was an inadequate representative, in part, because of a prior felony conviction. The court also indicated that whether Jamison actually pays his cellular phone bill was a factor in determining adequacy. Specifically, the court explained: "…there is a strong likelihood that the jury will focus on Jamison's credibility and not the claims of a potential class. This risk is heightened by the facts that uniquely pertain to Jamison. Jamison is asking for approximately \$16,000 in statutory damages. However, there is an open question as to whether Jamison or his mother paid the bill for the cellphone that was allegedly called." *Id*. at 105 (N.D. Ill. 2013).

22

Here, the combination of plaintiff's ongoing remunerative legal work with class counsel Lite Depalma and the fact that plaintiff did not pay his cellular phone bill is enough to disqualify plaintiff from serving as class representative.

## IV.    Conclusion

For the reasons set forth above, plaintiff's motion for certification must be denied.[15]

LIFEWATCH, INC.
By: /s/ Joseph Lipari

One of Its Attorneys
Joseph Lipari, Esq. (*pro hac vice*)
THE SULTZER LAW GROUP
77 Water Street, 8th Floor
New York, New York 10005
(646) 722-4266 / Fax: (888) 749-7747

David B. Goodman – dbg@greensfelder.com
Patrick Cotter – pcotter@greensfelder.com
Thadford A. Felton – taf@greensfelder.com
Courtney A. Adair – cadair@greensfelder.com
Greensfelder, Hemker & Gale, P.C.
200 West Madison Street Suite 2700
Chicago, Illinois 60606 (312) 419-9090

### CERTIFICATE OF SERVICE

I, Joseph Lipari, an attorney, hereby certify that on December 31, 2015, I electronically filed the foregoing Defendant Lifewatch Inc.'s Opposition to Plaintiff's Rule 23 Motion to Certify a Class, using the CM/ECF system, which will automatically send copies to all attorneys of record in the case.

By: /s/ Joseph Lipari
One of Its Attorneys
Joseph Lipari, Esq. (*pro hac vice*)
THE SULTZER LAW GROUP
77 Water Street, 8th Floor
New York, New York 10005
(646) 722-4266 / Fax: (888) 749-7747

---

[15] In the event the court is inclined to grant plaintiff's motion, Lifewatch respectfully requests an evidentiary hearing so that, *inter alia*, Lifewatch is afforded the opportunity to present live witnesses to refute the unsubstantiated "facts" that plaintiff pulled from Federal Trade Commission, et al. v Lifewatch, Inc., et al., 15-cv-5781, United States District Court, Northern District of Illinois, Eastern Division.