## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| ISMAEL SALAM, individually and on behalf of all others similarly situated, | Case No. 13-cv-09305 |
| Plaintiff, |  |
| v. | Hon. Charles R. Norgle, Sr. |
| LIFEWATCH, INC., a New York corporation, |  |
| Defendant. |  |

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF RULE 23 MOTION
## TO CERTIFY A CLASS, APPOINT PLAINTIFF AS CLASS REPRESENTATIVE, AND
## TO APPOINT KATRINA CARROLL OF LITE DEPALMA GREENBERG, LLC
## <u>AND PETER LUBIN OF DITOMMASO LUBIN P.C. AS CO-LEAD COUNSEL</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ............................................................................................1

II.     THE PROPOSED CLASS IS ASCERTAINABLE .........................................1

        A.  Lifewatch's Argument Is Premised On The Wrong Standard .....................2

        B.  The Class Definition Tracks Language Already Accepted By Courts
            In This Jurisdiction ...............................................................................3

        C.  Plaintiff Can Ascertain The Identities Of Class Members............................4

III.    PLAINTIFF'S EVIDENCE SUPPORTS NUMEROSITY ................................6

IV.     LIFEWATCH'S OBJECTIONS TO COMMONALITY HAVE NO MERIT ..................8

V.      ILLUSORY CONSENT ISSUES DO NOT DEFEAT PREDOMINANCE....................10

VI.     SALAM AND PROPOSED CLASS COUNSEL ARE MORE
        THAN ADEQUATE.......................................................................................12

        A.  Salam Is A Credible, Fully Informed And Capable Class Representative,
            And Has No Interests Antagonistic To The Class .......................................13

        B.  Salam Is Represented By Independent Counsel .........................................14

CONCLUSION...................................................................................................................18

i

# TABLE OF AUTHORITIES

*Abella v. Student Aid Ctr., Inc.*,
   15-3067, 2015 U.S. Dist. LEXIS 147299 (E.D. Pa. Oct. 30, 2015) ...........................................13

*Balschmiter v. TD Auto Fin. LLC*,
   303 F.R.D. 508 (E.D. Wis. 2014) ...........................................................................................2

*Balthazor v. Cent. Credit Servs.*,
   10-62435-CIV, 2012 U.S. Dist. LEXIS 182275 (S.D. Fla. Dec. 27, 2012) .............................11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014).....................................................................................*Passim*

*CE Design v. Beaty Constr., Inc.*,
   07 C 3340, 2009 U.S. Dist. LEXIS 5842 (N.D. Ill. Jan. 26, 2009) .............................................6

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3rd Cir. 2013) ..................................................................................................2

*Charvat v. Allstate Corp.*,
   29 F. Supp. 3d 1147 (N.D. Ill. 2014) ......................................................................................10

*Computer Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986)............................................................................................17

*Desai v. ADT Sec. Servs., Inc.*,
   No. 11 C 1925, 2011 U.S. Dist. LEXIS 77457 (N.D. Ill. July 18, 2011) ....................................1

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. La. 2008) ...........................................................................................11

*Harris v. comScore, Inc.*,
   292 F.R.D. 579 (N.D. Ill. 2013)...............................................................................................12

*Hurst v. Mauger*,
   11 C 8400, 2013 U.S. Dist. LEXIS 54523 (N.D. Ill. Apr. 16, 2013) ...........................................3

*In re Discovery Zone Sec. Litig.*,
   169 F.R.D. 104 (N.D. Ill. 1996)...............................................................................................15

*In re Groupon Inc.*,
   12 C 2450, 2014 U.S. Dist. LEXIS 67437 (N.D. Ill. May 16, 2014) ........................................17

ii

*Ira Holtzman, C.P.A., & Assocs. v. Turza,*
  728 F.3d 682 (7th Cir. 2013) ....................................................................................8

*Jamison v. First Credit Services, Inc.,*
  290 F.R.D. 92 (N.D. Ill. 2013)...........................................................................2, 11

*Jaroslawicz v. Safety Kleen Corp.,*
  151 F.R.D. 324 (N.D. Ill 1993)................................................................................16

*Key v. Integrity Surveillance Sols., Inc.,*
  No. 15-11235, 2015 U.S. Dist. LEXIS 163929 (E.D. Mich. Dec. 8, 2015) ................................2

*Kirby v. Cullinet Software, Inc.,*
  116 F.R.D. 303 (D. Mass. 1987)...............................................................................16

*Kleen Prods. LLC v. Int'l Paper,*
  306 F.R.D. 585 (N.D. Ill. 2015)...............................................................................17

*Kramer v. Scientific Control Corp.,*
  534 F.2d 1085 (3d Cir. 1976) ................................................................................14

*Levitt v. Southwest Airlines Co. (In re Southwest Airlines Voucher Litig.),*
  799 F.3d 701 (7th Cir. Ill. 2015).............................................................................15

*Manno v. Healthcare Revenue Recovery Group,*
  289 F.R.D. 674 (S.D. Fla. 2013)..............................................................................13

Messner v. Northshore Univ. HealthSystem,
  669 F.3d 802 (7th Cir. 2012) ..................................................................................3

*Mowry v. JP Morgan Chase Bank*, N.A.,
  06 C 4312, 2007 U.S. Dist. LEXIS 44222 (N.D. Ill. 2007)........................................................16

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) .........................................................................2, 3, 4, 5

*Muniz v. Rexnord Corp.,*
  04 C 2405, 2005 U.S. Dist. LEXIS 10472 (N.D. Ill. Feb. 10, 2005).........................................10

*Phillips v. Asset Acceptance, LLC,*
  736 F.3d 1076 (7th Cir. 2013) ................................................................................13

*Randolph v. Crown Asset Mgmt., LLC,*
  254 F.R.D. 513 (N.D. Ill. 2008)................................................................................9

*Rogers v. Baxter Int'l, Inc.*,
  04 C 6476, 2006 U.S. Dist. LEXIS 12926 (N.D. Ill. Mar. 22, 2006)............................................9

*Sauter v. CVS Pharm., Inc.*,
  No. 13-cv-846, 2014 U.S. Dist. LEXIS 63122 (S.D. Ohio May 7, 2014)..................................3

*Smith v. Family Video Movie Club, Inc.*,
  11-cv-1773, 2015 U.S. Dist. LEXIS 157107 (N.D. Ill. Nov. 19, 2015) ......................................4

*United States v. Dish Network, L.L.C.*,
  667 F.Supp.2d 952 (C.D. Ill. 2009) ........................................................................................3

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
  271 F.R.D. 668, 674, 2011 U.S. Dist. LEXIS 6215, 13 (D. Wyo. 2011) ..................................11

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,
  274 F.R.D. 229 (S.D. Ill. 2011) ...............................................................................................2

**Statutes**

Rule 23 (a)(4)......................................................................................................................12

47 U.S.C. § 227.....................................................................................................................1

**Other Authorities**

*Newberg on Class Actions*, § 3.3 (4th ed. 2002)....................................................................8

## I. <u>INTRODUCTION</u>

It is an unfortunate reality that whenever Congress enacts a law attempting to constrain illegal activity, there will be those who, rather than ceasing the prohibited conduct, instead react by finding ways to avoid or limit liability. That is precisely what Defendant Lifewatch, Inc. ("Lifewatch") has done here. By employing a business plan that involves hiring telemarketers to do its dirty work, having them sign agreements broadly stating that they will comply with the law, turning a blind eye towards keeping any records that would actually ensure compliance with the law, and then burying its head in the sand – seeing, hearing and speaking no evil – Lifewatch has carefully constructed a strategy to maximize its own profits while attempting to absolve itself of any liability for the thousands, if not millions, of violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., that have resulted from its telemarketing campaigns.

The Court should not allow Lifewatch to get away with this. As Judge Kennelly observed in *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240 (N.D. Ill. 2014), declining to certify a class under these circumstances "would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct." *Id.* at 250; *see also Desai v. ADT Sec. Servs., Inc.*, No. 11 C 1925, 2011 U.S. Dist. LEXIS 77457, *3-4 (N.D. Ill. July 18, 2011) (a contrary interpretation would mean that "a party could benefit from violations of the TCPA with impunity, so long as the task of actually making the phone calls were delegated to another entity").

## II. <u>THE PROPOSED CLASS IS ASCERTAINABLE</u>

Lifewatch incorrectly suggests that Plaintiff's proposed class is not ascertainable because Plaintiff has not set forth a specific plan to identify individual class members.

1

### A.        Lifewatch's Argument Is Premised On The Wrong Standard

As this Court is intimately aware, in *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), the Seventh Circuit explicitly rejected the heightened ascertainability requirement Lifewatch asks the Court to impose here. Noting that courts applying the heightened standard "have moved beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit," the *Mullins* Court rejected that approach because it "has the effect of skewing the balance that district courts must strike when deciding whether to certify classes." *Id.* at 657-58.

Lifewatch does not mention *Mullins* once in its opposition papers. Instead, it relies on other cases, such as *Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. 2013) and its progeny, that are simply not good law here. *See Mullins*, 795 F.3d at 662 (criticizing *Carrera*). The three cases Lifewatch relies upon from within this Circuit that declined to certify classes in TCPA actions on ascertainability grounds[1] were not only decided before *Mullins*, but "their holdings have been generally disagreed with by other courts." *Key v. Integrity Surveillance Sols., Inc.*, No. 15-11235, 2015 U.S. Dist. LEXIS 163929, at *8 (E.D. Mich. Dec. 8, 2015).

Here, Plaintiff seeks to represent a class defined solely by reference to objective criteria, identifying a specific group of people who were harmed in a specific way during a specific

---

[1] *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014); *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011); and *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013). A close examination of these cases demonstrates that not only do they misinterpret the TCPA's rules regarding "subscriber" v. "called party" standing, *see Birchmeier*, 302 F.R.D. at 246-47, they set forth a standard that would, for practical purposes, *never* permit the certification of a class in a TCPA case. But "[c]ourts routinely certify TCPA class actions." *Key*, 2015 U.S. Dist. LEXIS 163929, at *8.

2

period of time.[2]  It is not vague, nor is it based on any class member's subjective state of mind.  *See Mullins*, 795 F.3d 660-61.  Despite Lifewatch's suggestion to the contrary, it is not fail-safe,[3] as Lifewatch could raise certain affirmative defenses to defeat a class member's claim, including (at least theoretically) the consent of the called party.  *See, e.g., Sauter v. CVS Pharm., Inc.,* No. 13-cv-846, 2014 U.S. Dist. LEXIS 63122, at *11-25 (S.D. Ohio May 7, 2014) (collecting TCPA cases with "fail-safe" class definitions, typically based on language regarding lack of consent).  Of course, because the very purpose of Lifewatch's telemarketing scheme was to generate *new* customers, it is highly unlikely that Lifewatch could succeed on a consent defense (and in fact has offered no evidence whatsoever with regard to consent).

**B.**    **The Class Definition Tracks Language Already Accepted By Courts In This Jurisdiction**

Lifewatch takes particular issue with language in the class definition regarding calls "made by, on behalf of, or for the benefit of Lifewatch."  Defendant's Brief ("Db.") 13-15. This exact phrase appeared in the definition of the class that was certified in *Birchmeier*. 302 F.R.D. at 256.  And there is nothing wrong with it:  "[u]nder a plain meaning analysis, courts have found that 'on behalf of' liability under the TCPA arises for a defendant when a marketer is either 'a representative of' the defendant, or has acted 'for the benefit of' the defendant." *Hurst v. Mauger*, 11 C 8400, 2013 U.S. Dist. LEXIS 54523, at *9 (N.D. Ill. Apr. 16, 2013) (quoting *United States v. Dish Network, L.L.C.*, 667 F.Supp.2d 952, 963 (C.D. Ill. 2009)).  Even the

---

[2] That Lifewatch considers Plaintiff's inclusion of a discrete time period in the class definition to be a "fatal flaw" is absolutely nonsensical.  If Lifewatch is correct, *every single possible class in every single TCPA class action would be unascertainable.*

[3] Even if the Court determines that Plaintiff's current definition creates a fail-safe class, the proper approach is to permit Plaintiff to amend the class definition.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) ("[the fail-safe problem] can and often should be solved by refining the class definition rather than by flatly denying class certification").

Declaratory Ruling from the FCC that Lifewatch cites recognizes that "[s]tandard dictionary definitions of the phrase 'on behalf of' include, among other things, 'in the interest of,' 'as a representative of,' and '**for the benefit of**'— concepts that easily can be read to encompass common law agency principles." 28 FCC Rec. 6574, 6585 ("FCC Declaratory Ruling") at ¶ 30 (2013) (emphasis added). *See infra* at Section IV (addressing Lifewatch's vicarious liability for the acts of its telemarketers).

### C.     Plaintiff Can Ascertain The Identities Of Class Members

Here, the class is ascertainable. As an initial matter, *Lifewatch's own customers are in the class.*[4] While Lifewatch claims that it has no idea how its telemarketers obtain any of Lifewatch's customers, the customers certainly know and can self-identify. They can be contacted *directly* and can submit affidavits swearing, *e.g.*, (i) that they became customers of Lifewatch because of a telemarketing call made to their cell phones (ii) that was automated or had a pre-recorded message.[5] This is the precise method endorsed by the *Birchmeier* court. 302 F.R.D. at 248-50. Indeed, self-identification via affidavit *alone* is a sufficient method by which

---

[4] *See* 11/10/2015 Amended Baker Decl., *FTC v. Lifewatch, Inc.*, Case No. 15-C-5781 (N.D. Ill.) (**Exhibit 1**) at ¶ 35 (Lifewatch's Customer Relationship Management System, or CRM, "includes identifying information for each of Lifewatch's active customers" as well as the "identifying information of the outside seller that sold the customer account to Lifewatch"). All numbered exhibit references herein (*i.e.* "Ex. 1, Ex. 2") refer to the exhibits to this Reply Memorandum. All lettered exhibit references (*i.e.*, "Ex. A, Ex. B") refer to the exhibits to Plaintiff's Memorandum in Support of his Motion for Class Certification, ECF Doc. 75.

[5] While Plaintiff recognizes that this method, on its own, would not identify *all* class members, given that it excludes any call recipient who did not become a Lifewatch client, that fact alone is not sufficient reason to deny class certification. *See Smith v. Family Video Movie Club, Inc.*, 11-cv-1773, 2015 U.S. Dist. LEXIS 157107, at *12-13 (N.D. Ill. Nov. 19, 2015) (*"the danger that Plaintiffs' proposed classes ultimately will include somewhat fewer members than they might if all off-the-clock work was accounted for is not a reason to deny certification in this case. 'When it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good.'" (quoting *Mullins*, 795 F.3d at 666). However, this is not the only way to ascertain the identities of class members, as explained further below.

to ascertain class membership. *Mullins*, 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.").

Non-customer members of the class can also self-identify through affidavits and, although not required, could provide phone records demonstrating receipt of such a call. *See Birchmeier*, 302 F.R.D. at 248-50. Though it is by no means exhaustive, Mr. Salam identified the phone number that Lifewatch's telemarketers used to call him, and there is other evidence in the record containing additional numbers used by Lifewatch's telemarketers.[6] Further, there is evidence to suggest that Lifewatch either already has the numbers its telemarketers use to contact customers (and has failed to produce them), or is in the best position to obtain them. To wit: in applications for business licenses filed with the Florida Secretary of State, Lifewatch stated that its "Quality Control" measures provided to its "outside sellers" required all outbound calls to display both the name of the outside seller and a number that could be called back to speak to a live operator.[7] And Lauren Vandewater, the "Call Center Liaison" for Lifewatch, is in regular communication with the telemarketers.[8] Individual class members can be ascertained from the phone records associated with these numbers.

Regardless, Lifewatch should not be permitted to benefit from its "ostrich" defense. Lifewatch is not entitled to immunity from its corporate misdeeds when it alone made the decision to funnel its telemarketing campaign through "outside sellers" – most of which no

---

[6] *See, e.g.,* Plf. Ex. G (Mey Decl.) (identifying telemarketer numbers).
[7] *See* FTC PX 4 (Velez Decl.), Att. B at 10 (**Exhibit 2**).
[8] *See* FTC PX 89 (Einikis Decl.), Att. A generally (**Exhibit 3**).

longer exist[9] – and then stuck its head in the sand, failing to collect or maintain any information whatsoever as to how those customer leads were generated. *See Birchmeier*, 302 F.R.D. at 250 ("defendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping . . . Doing this—or declining to certify a class altogether, as defendants propose—would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct"); *CE Design v. Beaty Constr., Inc.*, 07 C 3340, 2009 U.S. Dist. LEXIS 5842, at *9 (N.D. Ill. Jan. 26, 2009) (rejecting the notion that a "master list of plaintiffs is necessary for class certification," and holding that the court would "not bar class certification because the defendant has lost or destroyed the list of its alleged victims . . . the potential plaintiffs that come forward will have to represent to the Court--via affidavit and under the penalty of perjury--that they received the fax in question on the dates in issue"). Lifewatch's failure to gather or maintain such information should not serve as a shield against the consequences of its own indifference, and its objections to ascertainability should be rejected.

## III. PLAINTIFF'S EVIDENCE SUPPORTS NUMEROSITY

Lifewatch cannot seriously argue that the proposed class does not have 40 members. According to its CEO, Lifewatch has upwards of 66,000 current customers.[10] Even if the class is limited to these people (which it should not be), "common sense" dictates numerosity. *Lopez v. City of Chicago*, 2002 U.S. Dist. LEXIS 20613, *9-10 (N.D. Ill. Oct. 24, 2002).

---

[9] Lifewatch itself acknowledges that "many" of these telemarketers "are now defunct."  Db. 9. Then, in a Kafka-esque twist, it admonishes Plaintiff for failing to conduct discovery on these defunct entities after they have mysteriously vanished into the ether.

[10] *See* 12/14/2015 Transcript (excerpted), *FTC v. Lifewatch, Inc.*, No. 15-C-5781 (N.D. Ill.), at 144:1-2 (**Exhibit 4**).

To dispute this point, Lifewatch submits a chart of "actual facts." Db. 6-7. Unsurprisingly, the "actual" facts Lifewatch presents are anything but.[11]  For example, Lifewatch challenges Plaintiff's allegation that one of Lifewatch's telemarketers generated **10,000 outbound calls per day containing a pre-recorded message using a PBX server**.  Db. 15.  While it is true that the initial telemarketer who spoke to the consumer claimed that its company, "Senior Life Savers," was not affiliated with Lifewatch, the telemarketer's tune changed substantially when the regional manager took over the call.  The regional manager confirmed that Senior Life Savers used to be called Lifewatch; confirmed that the company's main PBX server that generates the outbound call and cycles through about 10,000 calls a day; and confirmed that the company uses a pre-recorded message, "seniors welcome, you are available to receive our medical alert system at no cost."  Plf. Ex. 2.  The regional manager also noted that he was "not surprised" that the consumer was on the Do Not Call list but still received calls from Lifewatch/Senior Life Savers.  *Id.*

Lifewatch next challenges Plaintiff's statement that one of Lifewatch's telemarketers provided services solely for Lifewatch and sent out **nearly two million calls a day, six days per week** to consumers.  Db. 15.  Lifewatch contends that the receiver appointed in the *FTC v. Worldwide* litigation testified that the telemarketer did not provide services solely to Lifewatch, and that the same telemarketer provided services to other entities.  Notably, Lifewatch does not submit evidence to dispute the number of calls, and there is no indication that the "sole" telemarketer retained by Lifewatch was performing *medical alert telemarketing* for any company other than Lifewatch.  *See* Plf. Ex. 2.

---

[11] *See* Plaintiff's Reply Chart (responding to Lifewatch's chart) (**Exhibit 5**).

Lifewatch also challenges Plaintiff's account (set forth in an affidavit from Mr. Gross) that Lifewatch was ***obtaining 8,000 calls per month from telemarketers***. Db. 15. Lifewatch's only response is simply to deny that its CEO, Evan Sirlin, ever made such a statement as Mr. Gross claims. *See* Db. 11 n.7. However, even if the Court were to disregard this allegation, there is still sufficient information to satisfy numerosity. *See Newberg on Class Actions*, § 3.3 (4th ed. 2002) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

Finally, although Lifewatch suggests that numerosity cannot be satisfied unless Plaintiff identifies the specific telephone numbers which Defendant's telemarketers used to make calls to consumers, Db. 16-17 (citing cases), this is merely one method of establishing numerosity. Unsurprisingly, Plaintiff's counsel has had significant difficulty obtaining third party discovery from Lifewatch's admittedly defunct telemarketers.[12] But, despite the fact that these entities are no longer operating (likely by design), and some have not been operating for years, Plaintiff has obtained and offered to the Court more than enough evidence to demonstrate that this matter is appropriate for class certification. Lifewatch's dubious attacks on Plaintiff's "failure" to conduct discovery on these largely defunct entities cannot disguise this fact.

## IV.    LIFEWATCH'S OBJECTIONS TO COMMONALITY HAVE NO MERIT

"Class certification is normal in litigation under §227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). Lifewatch overly complicates commonality, asserting that vicarious liability will cause "overwhelming confusion," and that Lifewatch might have unspecified defenses "unique" to Mr. Salam. Db. 17-18. Neither of these objections is persuasive. What is "overwhelming" (although

---

[12] *See* Carroll Decl. (**Exhibit 6**) at ¶¶ 1-10.

not remotely confusing) is the sheer volume of evidence tying Lifewatch to its telemarketers through – at the very least – apparent authority:

- Lifewatch employed multiple telemarketers that were adjudged to have improperly used robocalls and prerecorded messages to obtain accounts for Lifewatch;[13]

- Third party telemarketers retained by Lifewatch had access to detailed information regarding the nature and pricing of Lifewatch's products and services;[14]

- Lifewatch gave its telemarketers the ability to enter certain consumer information into Lifewatch's database;[15]

- Lifewatch approved, wrote or reviewed the scripts used by its telemarketers;[16] and

- The telemarketers not only identified themselves as Lifewatch, but the paperwork and system which the consumers received were marked with the name "Lifewatch."[17]

This is *precisely* the type of evidence the FTC approved in its Declaratory Ruling as adequately demonstrating apparent authority. 28 F.C.C. Rec. at 6592-93. Accordingly, Plaintiff can establish that Lifewatch was vicariously liable for its telemarketers' violations of the TCPA.

---

[13] *See, e.g.,* Perm. Inj., *FTC v. Worldwide Info Servs., Inc., et al.*, Case No. 6:14-cv-08 (C.D. Fla.) (against Worldwide and American Innovative) (**Exhibit 7**); *id.* (against Live Agent) (**Exhibit 8**).

[14] For example, a product script used by a Lifewatch telemarketer details what is included with the system, the monthly monitoring cost, and the cost of additional monitoring for a spouse. *See* Plf. Ex. 3 (Einikis Decl.), Att. A at 45-49. *See also id.* at 53-56 (enclosing "Insertion Order" to telemarketer charting the cost of the products sold and the cut to the telemarketer).

[15] Plf. Ex. 1 (Amended Baker Decl.) at ¶ 20. *See also* Plf. Ex. 3 (Einikis Decl.), Att. A at 21 (11/21/2014 Lifewatch email advising telemarketers to "continue to do everything the same on your end as far as entering the deal into the system"))

[16] *See, e.g.,* Plf. Ex. 3 (Einikis Decl.), Att. A at 18 (12/23/2014 email from telemarketer to Lifewatch revising the sales script and sending it overfor approval); *id.* at 45-49 (6/2015 email attaching telemarketing script edited by Lifewatch); Plf. Ex. 2 (Velez Decl.) at ¶¶ 9-10, 12-13 and Att. E (attaching telemarketing script attached to Lifewatch's 2012, 2013 and 2015 Florida business license applications); and Plf. Ex. D (Gross Decl.) at ¶¶ 9-10 (Lifewatch confirms responsibility to monitor and control telemarketers, and to ensure that its telemarketers used the scripts Lifewatch provided).

[17] *See, e.g.,* Plf. Ex. G (Mey Decl.) at ¶ 8 and Att. A.

As to Lifewatch's second point concerning "unique" defenses, this is evaluated under typicality, not commonality. *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513 (N.D. Ill. 2008); *Rogers v. Baxter Int'l, Inc.*, 04 C 6476, 2006 U.S. Dist. LEXIS 12926 (N.D. Ill. Mar. 22, 2006); *Muniz v. Rexnord Corp.*, 04 C 2405, 2005 U.S. Dist. LEXIS 10472 (N.D. Ill. Feb. 10, 2005) (evaluating unique defenses in context of typicality). The existence of a unique defense does not preclude certification, except when the defense "is likely to consume a significant portion of the litigant's time and energy and where there is a danger that preoccupation with defenses unique to the representatives will cause absent class members to suffer." *Muniz*, 2005 U.S. Dist. LEXIS 10472, at *12. Lifewatch has not articulated a single such "unique" defense.

Putting aside the fuzziness of Lifewatch's so-called defenses ("*may* raise," "*may* be unique," "*may* have called," "*may* have been different"), the fact that telemarketer A may have called Mr. Salam and telemarketer B may have called another class member is not a "defense"; the point is that *all* Class members were called for the purpose of selling **Lifewatch's goods and services**. And, even if Lifewatch could lay claim to a "unique" defense, it would hardly consume a significant portion of time and energy in any event or cause absent class members to suffer. Lifewatch's concerns are simply unfounded. Once Plaintiff establishes that Lifewatch's telemarketers were placing such calls to market Lifewatch's medical alert systems, which telemarketer placed the call is no obstacle to commonality.

## V.      ILLUSORY CONSENT ISSUES DO NOT DEFEAT PREDOMINANCE

Lifewatch principally contends that Plaintiff fails to satisfy the predominance requirement because of prior express consent.[18] Db. 18, 19. But issues of individualized consent only predominate "when a defendant sets forth *specific evidence* showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) (emphasis added).

> However, if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification.

*Id.* at 107. Because Lifewatch has only made vague assertions about consent, and because Lifewatch has failed to put forth *any* evidence showing that a significant percentage of the putative class (or even *one* such class member) consented to receiving calls on their cellphones, Lifewatch's challenge to predominance in this regard must be rejected.[19]

Lifewatch's cases concerning a purported lack of predominance due to illusory consent issues (Db. 19) are not remotely analogous: they all involve solicitations made to *existing* customers, *not* solicitations for new business. In *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. La. 2008), discovery revealed that the defendant had used various sources to cull fax numbers and that those sources included, among others, "lists of companies with which [defendant] or its affiliates had an established business relationship." Likewise, *Versteeg v.*

---

[18] Lifewatch erroneously asserts that prior express consent is an element of a TCPA claim. Db. at 18. "'[T]he prevailing view in this district is that 'prior express consent' under the TCPA 'is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim.'" *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) (citation omitted).

[19] Lifewatch suggests that an inference can be drawn from the telemarketing agreements and affidavits that consent was given. Db. at 18-19 n.11. However, the affidavits and other quality control measures touted by Lifewatch are only a recent innovation by Lifewatch (October 2014). 12/14/2015 Transcript (excerpted), *FTC v. Lifewatch, Inc.*, Case No. 15-C-5781 (N.D. Ill.) (**Exhibit 4**), at 102:11-17. Noticeably absent from the affidavit is any specific reference to prior express consent. Plf. Ex. 1 (Amended Baker Decl.) at Exhibit C.

*Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674, 2011 U.S. Dist. LEXIS 6215, 13 (D. Wyo. 2011), involved debt collection calls and established business relationships between the creditor and class members. And *Balthazor v. Cent. Credit Servs.*, 10-62435-CIV, 2012 U.S. Dist. LEXIS 182275 (S.D. Fla. Dec. 27, 2012), dealt with the discrete question of whether, "if a customer provides his cellular telephone number to an original creditor, he has consented to calls from the original creditor's debt collector." *Id.* at *10.

This case simply does not present similar issues of consent: the calls at issue here were generic and specifically intended to solicit new business. Basic logic dictates that the very idea that class members could have consented *in writing* to receiving telemarketing calls soliciting *new customers* is nonsensical. Plus, even assuming, *arguendo*, that Lifewatch's telemarketers employed a policy or practice of obtaining express consent from consumers (as Lifewatch claims but Plaintiff does not concede), that policy or practice would itself make the question of consent amenable to class-wide proof.

Lifewatch's remaining one-off objections (Db. 18-19) are misplaced and/or irrelevant, and certainly don't predominate in any event. For example, Plaintiff has already presented evidence that several of Lifewatch's telemarketers used auto-dialers, and Plaintiff can tie some of the class members to telemarketers through Lifewatch's CRM. Moreover, Lifewatch has not shown that *anyone ever* consented. Accordingly, predominance is not an obstacle to class certification.

## VI.     SALAM AND PROPOSED CLASS COUNSEL ARE MORE THAN ADEQUATE

The "adequacy" requirement of Rule 23 (a)(4) is satisfied when a named plaintiff shows that his interests are not antagonistic to those of absent class members and that he is represented by counsel of sufficient diligence, experience, and competence to litigate the class claims

vigorously. *Harris v. comScore, Inc.*, 292 F.R.D. 579, 587 (N.D. Ill. 2013). Salam makes both such showings.

      **A.**    <u>**Salam Is A Credible, Fully Informed And Capable Class Representative, And Has No Interests Antagonistic To The Class**</u>

Mr. Salam is a practicing attorney and member of the bar of the State of Illinois. Other than a traffic ticket, he has never been convicted of any crimes, including no misdemeanors involving allegations of dishonesty or moral turpitude. Plf. Ex. J (Salam Dep.) at 10:1-8. Mr. Salam understands that his duty as a class representative is to "represent everyone who was similarly harmed and make sure the class counsel are pushing the case forward." *Id*. at 45:13-15. If he is presented with a settlement, Mr. Salam also knows that he is to "mak[e] sure that class counsel negotiates a settlement that provides, if possible, for relief for the class and myself included in that class." *Id*. at 50:12-15. In this case, Mr. Salam has diligently reviewed pleadings, produced discovery and submitted to a deposition. Indeed, he has performed more than what the Seventh Circuit has called a "nominal" role of a class representative in connection with this litigation. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013).

Lifewatch argues incorrectly that Salam is inadequate because his father pays his cellular phone bill. The relevant law does not hold that only those who pay can be adequate plaintiffs; to the contrary, anyone who received a call can properly assert a TCPA claim. *Birchmeier*, 302 F.R.D. at 247 ("plaintiffs need not establish that the people who received the calls at the numbers on the list of 930,000 were the actual subscribers; the fact they received calls is enough to permit them to sue"); *see also Manno v. Healthcare Revenue Recovery Group*, 289 F.R.D. 674, 683 (S.D. Fla. 2013) (holding that "the TCPA does not require the plaintiff to be 'charged for' the calls in order to have a standing to sue"); *Abella v. Student Aid Ctr., Inc.*, 15-3067, 2015 U.S. Dist. LEXIS 147299, *7-8 (E.D. Pa. Oct. 30, 2015) ("we therefore reject SAC's assertion that

Abella must plead that he was charged for the messages in order to state a plausible claim for relief"). Salam received the offending call and is the "called party" within the meaning of the TCPA. He is the one whose privacy was violated, has the right to pursue his claims under the TCPA, and is adequate to represent the class.

Though Lifewatch acknowledges that Mr. Salam is not acting as counsel in this case, it takes issue with Mr. Salam's profession as a class action attorney. But just because Mr. Salam is a class lawyer does not render him inadequate. If anything, the opposite is true. Attorneys like Salam have historically occupied an important role as "private attorneys general [ ] frequently in class action contexts" where lawyers "have guided litigation insisting that legislative mandates be obeyed, administrative regulations respected, and constitutional guarantees observed." *See Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976). There is nothing to indicate that Mr. Salam would ever put his own interests ahead of any class members: he has never received an incentive fee in connection with his involvement in any class case, *see* Plf. Ex. J (Salam Dep.) at 23:13-17, and neither he nor his firm, Siprut PC have any financial interest in this litigation, *id.* at 58:10-11. In short, there is absolutely nothing to suggest that Salam has any interest in "maximizing the return to counsel" as claimed by Lifewatch. Db. 21.

**B.**     **Salam Is Represented By Independent Counsel.**

Mr. Salam is represented by *two* independent counsel: Peter Lubin of DiTommaso Lubin, P.C. and Katrina Carroll of Lite DePalma Greenberg, LLC ("LDG"). Notably absent from Lifewatch's discussion of adequacy is *any* challenge to the DiTommaso firm's representation. Nor could there be, given that the DiTommaso firm has never had any prior relationship of any kind with Mr. Salam or Siprut P.C. before this case. Plf. Ex. J (Salam Dep.) at 20:3-21:13.

With respect to LDG, Mr. Salam testified at his deposition that he was referred to LDG by the managing partner of his firm who recommended he retain independent counsel. Plf. Ex. J (Salam Dep.) at 57:16-23. After that, Mr. Salam signed a retainer with LDG and testified "that I have not been guaranteed anything" in connection with prosecuting this case. *Id.* at 48:8-10. There is not a shred of evidence of any impropriety in the formation of the attorney-client relationship between LDG and Salam, and no evidence that this litigation is lawyer-driven by LDG.

With respect to the relationship between Siprut and LDG on unrelated class action matters, Mr. Salam and LDG have at all times been forthright with the parties and this Court in accordance with the "clear and direct disclosure" mandate of the Seventh Circuit. *Levitt v. Southwest Airlines Co. (In re Southwest Airlines Voucher Litig.)*, 799 F.3d 701, 716 (7th Cir. Ill. 2015). On February 13, 2015, Salam filed a Disclosure Statement (Dkt. No. 88) detailing each of the four cases in which Siprut and LDG were both involved. Plaintiff also submits the Declaration of Katrina Carroll to update that information.[20] With the exception of one case, each case is either a consolidated or an MDL proceeding involving multiple counsel.[21] Siprut and LDG have no fee sharing agreements in any of the matters identified in the Disclosure Statement or in the Declaration of Katrina Carroll attached hereto.[22]

There is no blanket prohibition on class action attorneys serving as plaintiffs in class action cases when represented by independent counsel and where, as here, adequate disclosure has been made. To be sure, if a class representative has a familial relationship with class counsel, is an employee of counsel, or is economically dependent on counsel, a court may find

---

[20] *See* Plf. Ex. 6 at ¶¶ 11-17.
[21] *Id.* at ¶ 13.
[22] Id. at ¶ 14.

that the relationship disqualifies the plaintiff from serving as an adequate representative. None of those circumstances are present here and, as such, all of Defendant's authorities are inapposite. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977) (involving family relationships and close relationships between attorneys who shared office space); *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 108 (N.D. Ill. 1996) (two class representatives were personal stockbrokers for class counsel, there was previous representation in similar cases including representation of friends and family, and there were case referrals involving securities fraud claim); *Mowry v. JP Morgan Chase Bank*, N.A., 06 C 4312, 2007 U.S. Dist. LEXIS 44222, at *9-12 (N.D. Ill. 2007) (brother of one of the class representatives was an attorney at one of the law firms serving as class counsel, and the other class representative was a close friend); *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324 (N.D. Ill 1993) (class counsel served with plaintiff as co-counsel in at least 42 cases, including 25 cases pending at the time).

LDG is separate and completely independent from Siprut. The firms are not "of counsel" to each other. Nor do they share offices.[23] There are no familial relationships between Salam and anyone working at LDG. Nor are there any familial relationships between the employees of Siprut and LDG.[24] Siprut has never represented any LDG employees or family members of employees in any case.[25] Nor is there any close business relationship between Salam and LDG as in *Discovery Zone* or an extensive ongoing collaborative relationship between Salam and Siprut on the one hand, and LDG on the other, as in *Jaroslawicz.*[26] Indeed, Lifewatch's

---

[23] *Id.* at ¶ 15.

[24] *Id.* at ¶ 16.

[25] *Id.* at ¶ 17.

[26] Lifewatch's attempt to create such a relationship by mischaracterizing Siprut's and LDG's involvement in *In re: Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.* (1:13-cv-09116) is totally disingenuous. Db. 21, n.14. The NCAA MDL, currently pending before Judge Lee, is the result of the Judicial Panel on Multi-District Litigation's consolidation

characterization of the "multi-million dollar financial relationship" between LDG and Siprut is based on nothing but rote speculation.

A similar adequacy challenge was considered – and rejected – by the court in *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 310 (D. Mass. 1987). There, the defendants objected to plaintiff Kirby's adequacy because Kirby was a class action lawyer. Because Kirby served in other cases as class counsel with his lawyers, the defendants argued that Kirby's "interest in a share of the legal fees in those cases exceeds the small recovery he can expect as a plaintiff in this case." The court disagreed and allowed Kirby to represent the class because there was no fee sharing arrangement between Kirby and his counsel in the matter. *Id*. The court found "no indication of any inappropriate interdependence of class counsel and Kirby," *even though Kirby's firm and class counsel were involved in several other consolidated proceedings together*, just like the *NCAA* MDL proceeding and the other matters involving Siprut and LDG. *Id*. at 311. This Court should similarly so find.

The Court should disregard Defendant's accusations and find that Mr. Salam, LDG and DiTommaso Lubin are more than adequate to represent the class. *See, e.g., Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) ("character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received. . . .").

---

and transfer of over ten cases from all around the country into a single proceeding. *See* Case Management Order No. 1 in the NCAA MDL (**Exhibit 9**). *Over 40 plaintiffs' law firms are involved*. *See* the NCAA MDL Docket (**Exhibit 10**). Two of those firms happen to be Siprut and LDG on separate constituent matters, which involve different plaintiffs, different classes and interests. The firms are not "co-counsel," and have actually taken competing litigation positions in the MDL. *See* Pl. Ex. 10 (NCAA MDL Docket) at Dkt. 5 (preliminary injunction).

## VII.    <u>CONCLUSION</u>

For the reasons set forth above and in Plaintiff's initial motion, Plaintiff respectfully requests that the Court enter an order (i) certifying the Proposed Class, (ii) appointing Plaintiff as the Class Representative, (iii) appointing Katrina Carroll of Lite DePalma Greenberg, LLC and Peter Lubin of DiTommaso Lubin P.C. as Co-Lead Class Counsel, and (iv) granting any such further relief as this Court deems reasonable and just.[27]

Dated: January 20, 2016                              Respectfully submitted,

                                        By:      */s/ Katrina Carroll*_____
                                                 Katrina Carroll, Esquire
                                                 Kyle A. Shamberg, Esquire
                                                 **LITE DEPALMA GREENBERG, LLC**
                                                 *kcarroll@litedepalma.com*
                                                 211 W. Wacker Drive
                                                 Suite 500
                                                 Chicago, IL 60606
                                                 312.750.1265

                                        By:      */s/ Peter S. Lubin*_____
                                                 Peter S. Lubin, Esquire
                                                 **DITOMASSO LUBIN P.C.**
                                                 17W 220 22nd Street

---

[27] Lifewatch requests an evidentiary hearing to refute what it has deemed Plaintiff's "unsubstantiated facts." Db. 25 n.14. However, neither Fed. R. Civ. P. 23 nor this District requires that an evidentiary hearing occur. *See, e.g., Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 590 (N.D. Ill. 2015); *Dicker v. Allstate Life Ins. Co.*, 1990 U.S. Dist. LEXIS 8586, at *18 (N.D. Ill. July 11, 1990) ("[p]laintiffs' evidence is not being offered at trial… . Objections to the admissibility of evidence are clearly premature."); *cf. In re Groupon Inc.*, 12 C 2450, 2014 U.S. Dist. LEXIS 67437, at *8 (N.D. Ill. May 16, 2014) (even class certification issues in the securities context are "generally determined without oral argument, let alone evidentiary hearing, even where they involve questions regarding liability of an expert"); . Considered by some courts as an "extraordinary" step, *see, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 U.S. Dist. LEXIS 131535, *15 (N.D. Cal. Sept. 10, 2013), it is only where the record is insufficient to resolve class certification that a hearing is necessary. Here, Lifewatch doesn't contest that the record is inadequate; it simply does not like what the record says. Lifewatch has submitted declarations to address any evidentiary concerns it has and a hearing is neither necessary nor appropriate at this stage.

Suite 410
Oakbrook Terrace, IL  60181
630.333.0002
Fax: 630.333.0333