**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>ISMAEL SALAM, individually, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIFEWATCH, INC., a New York corporation, )<br>)<br>Defendant. ) | Case No. 1:13-cv-9305 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR DECERTIFICATION**

Joseph Lipari, Esq.
The Sultzer Law Group
270 Madison Avenue, Suite 1800
New York, New York 10016
(917) 444-1960
liparij@thesultzerlawgroup.com

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………………..…i

Table of Authorities……………………………………………………………………….…ii

   I.    REPLY ARGUMENT……………………………………………………...………..1

         A.  Consumer Refunds and the FTC's Distribution of the $2 Million Payment……...1

         B.  Similarity Between the FTC Case and this Class Action………………………….6

   II.   CONCLUSION……………………………………………………………………….8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................................4

*Conde v. Sensa*,
   2018 U.S. Dist. LEXIS 154031 (S.D. Cal. Sep. 10, 2018) ......................................................6, 7

*Denius v. Dunlap*,
   330 F.3d 919, 926-927 (7th Cir. 2003)……………………………………………………..1

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   931 F.3d 1065 (11th Cir. 2019) ...................................................................................................4

*Kamm v. California City Development Corp.*,
   509 F.2d 205 (9th Cir. 1975) .........................................................................................1, 2, 6, 7

*Mullins v. Direct Dig., Ltd. Liab. Co.*,
   795 F.3d 654 (7th Cir. 2015) ......................................................................................................4

*Thornton v. State Farm Mut. Auto Ins. Co.*,
   2006 U.S. Dist. LEXIS 83972 (N.D. Ohio Nov. 17, 2006) ....................................................2, 3

Plaintiffs fail to address the factors set forth in *Kamm v. California City Development Corp.*, 509 F.2d 205 (9th Cir. 1975), and fail to distinguish the litany of cases standing for the clear proposition that Rule 23's superiority requirement is not met when a defendant has entered into a settlement with a government entity which provides relief to class members. Instead, plaintiffs disingenuously reframe defendant's arguments and then simply pose a question about the extent to which defendant's $2 million payment to the FTC will be used for consumer redress. This is a red herring because even if the $2 million payment was not a component of the settlement with the FTC, under *Kamm* and its progeny the FTC settlement's remaining expansive injunctive relief and refunds to consumers (including class members) are more than sufficient to require decertification here. As demonstrated in the moving papers and herein, the government settlement is a superior method of resolving plaintiffs' claims and thus decertification is necessary.

## I. REPLY ARGUMENT[1]

### A. Consumer Refunds and the FTC's Distribution of the $2 Million Payment

To be clear, the $2 million payment under the Stipulated Order is required in addition to, *inter alia*: a) a permanent telemarketing ban for Lifewatch; b) customer notification; and c) customer refunds upon request. This means that distribution of the $2 million is necessarily ***over and above*** the customer refunds already required under the Stipulated Order. Accordingly, given that plaintiffs argue "there is no assurance that even a single penny will be paid out to any member of the certified class,[2]" plaintiffs are apparently overlooking or ignoring the fact that

---

[1] Defendant respectfully requests that the court take judicial notice of documents from the Federal Trade Commission's official website, which are attached to this reply brief as exhibits and also hyperlinked in footnotes 5 and 8. *See Denius v. Dunlap,* 330 F.3d 919, 926-927 (7th Cir. 2003) (Explaining that it is appropriate to take judicial notice of documents from a government agency's website).

[2] Doc. No. 216, p. 1.

1

money is already being paid out in accordance with the Stipulated Order's mandatory refund program. And, for the avoidance of doubt, plaintiffs have consistently acknowledged that the certified class necessarily includes Lifewatch's customers.[3] Thus, even setting aside the distribution of the $2 million, the Stipulated Order provides robust monetary and injunctive class relief. So, plaintiffs' argument is a red-herring given that under *Kamm* and its progeny, even in the absence of the $2 million payment, decertification is required. *See Kamm*, *supra* at 208 (explaining that a government settlement is superior to a class action even when the government settlement provides no relief to a group of named plaintiffs and part of the putative class); *See*, e.g. *Thornton v. State Farm Mut. Auto Ins. Co.,* 2006 U.S. Dist. LEXIS 83972, at *11-12 (N.D. Ohio Nov. 17, 2006) (explaining that the [assured voluntary compliance order with state Attorneys General] provided substantial compensation and that plaintiff's "speculation that she could achieve a better settlement does not make a class action superior.")

In any event, the FTC does not -- as plaintiffs apparently contend -- arbitrarily decide "how, or even if, to distribute [$2 million] of funds" to consumers.[4] Rather, as explained by the FTC's Office of Claims and Refunds in its 2018 Annual Report on Refunds to Consumers ("FTC Refund Report"),[5] "once an FTC lawsuit or settlement is final and the defendants have paid the money the court orders, the Office of Claims and Refunds develops a plan for returning that money to the right people."[6] In doing so, the FTC uses many different tools. Specifically, as explained in the FTC Refund Report[7]:

---

[3] Doc. No. 168, pp. 1-2, Plaintiffs' Motion to Compel Class List for Purposes of Class Notice.
[4] Doc. No. 216, p. 3, Plaintiffs' Opposition Brief
[5] Exhibit A, Last Accessed by Counsel on October 18, 2019 and available at https://www.ftc.gov/system/files/documents/reports/2018-annual-report-refunds-consumers/annual_redress_report_2018.pdf
[6] *Id.* at 1.
[7] *See id.* at 1-2. (emphasis added)

2

> Success in getting refunds to people depends principally on whether the FTC has a reliable list of customers, including their contact information and the amount of money they spent. Usually, the FTC has this information, and it mails checks out to a list of known customers. In some cases, there is no list of known customers or there is insufficient contact information, and the agency must use a claims process to identify people who should receive a refund. There are at least six steps involved in every refund program:
>
> (1). Identify who is eligible for a refund.
> (2). Determine how the money will be divided.
> (3). Mail checks.
> (4). Update names and addresses as needed.
> (5). Consider whether an additional check mailing is feasible.
> (6). Send any remaining money to the U.S. Treasury.
>
> . . . .
>
> Without a list of customers with contact information, getting refunds out may require a claims process. In such cases, the people affected must apply for a refund. The agency might conduct a media campaign and use paid advertisements to let people know that refund money is available and encourage them to visit our website to apply. In other cases, the agency uses whatever minimal data is available, such as a consumer's email address, to tell consumers about the refund process.
>
> . . . .
>
> **If there is no customer list and a claims process is not feasible, the agency's Consumer Sentinel Database may be used to find eligible recipients. Consumer Sentinel contains millions of complaints from people who contacted the FTC, the Better Business Bureau, or other federal, state, and local law enforcement offices. The FTC may search for complaints related to the defendants and use the contact information in those complaints to create a list of potential refund recipients**.
>
> . . . .
>
> In cases where the court order does not specify the parameters of the refund program, the FTC determines eligibility criteria and the formula for calculating payments to eligible recipients. In cases where the settlement fund is not large enough to provide full refunds to every customer, the FTC analyzes the data to determine how much individuals will receive. Key factors that influence these decisions include administrative costs, the size of the refund to each recipient, how much variation there is between the lowest and highest loss amounts, and other details about the case. In most FTC cases, the money is distributed on a pro rata basis, meaning that each recipient receives an equal percentage of his or her total loss.

In contrast, when a class action is resolved, a common fund is established to pay class members their proportional share of damages after court-approved attorneys' fees and expenses

are deducted from the fund. *See, e.g., In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1092 (11th Cir. 2019) ("In typical common-fund cases, attorney's fees are necessarily included in the class benefit . . . because the defendant pays a lump sum of cash, a percentage of which is awarded to class counsel.") (internal citations omitted). The costs of administering notice and distributing payments to the class are also frequently deducted from the common fund. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 980 (N.D. Ill. 2011) (class settlement provided that cost of settlement administration "shall be paid from the Settlement Fund prior to distribution of the Net Settlement Fund."). Moreover, due to the inherent difficulty of notifying class members of a settlement where, as here, there is not a clear record of each member of the class, and the low likelihood that any notified class member will complete the claims process necessary to obtain payment, the "claims rate" for class action resolutions is often very low. *See, e.g., Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 667 (7th Cir. 2015) ("only a tiny fraction of eligible claimants ever submit claims for compensation in consumer class actions").

      The process by which the federal government ensures that consumers obtain redress is far superior to anything that could be accomplished through this class action. Under the Stipulated Order and in accordance with the process set forth in the FTC Refund Report, the FTC can facilitate consumer redress *over and above* the customer refund program by, for instance: identifying impacted consumers and mailing checks to individuals appearing in the Consumer Sentinel, which is "an investigative cyber tool and complaint database…that provides civil and criminal enforcement organizations immediate and secure access to identity theft, internet, telemarketing (including do not call), and other consumer related complaints," and which is

4

"available only to members of law enforcement organizations that have entered into a confidentiality and data security agreement with the FTC.[8]"

Any attempt by plaintiffs to administer relief to consumers in this class action would include use of customer lists and perhaps publication notice, but it would *not* include use of the Consumer Sentinel, a mechanism that is totally unavailable to anyone other than the FTC and its law enforcement partners. Again, under the Stipulated Order, customer refunds are already being provided to the customers who have requested a refund. In other words, the customer list that plaintiffs compelled in this class action is already being used to provide redress under the Stipulated Order. But, only the FTC knows -- through its Consumer Sentinel -- which individuals have complained to law enforcement about receiving "robocalls" involving medical alert devices, and where to contact those complainants. This information is not available to Lifewatch nor is it, or can it be, available to class counsel or an administrator of notice to the class.

As set forth in defendant's moving papers, because of the non-exclusive nature of the relationship Lifewatch had with its outside sales companies (i.e. the outside sales companies sold accounts it originated to Lifewatch and to Lifewatch's competitors), it is impossible to know whether a hypothetical recipient of a medical monitoring "robocall" in, for instance, 2014 or 2015 -- who never became a Lifewatch customer -- was being called by one of Lifewatch's outside sales companies and, if they were, whether the outside sales company was calling to originate an account for Lifewatch or one of its many competitors. Therefore, there is no list, nor

---

[8] Exhibit B, Last Accessed by Counsel on October 18, 2019 and available at: https://register.consumersentinel.gov/.

can there be any list, of "robocall" recipients in this case, as the Court recognized in its 2016 Certification Order.[9]

In light of the extensive benefits provided by the FTC Settlement that overlap with those that plaintiffs could only hypothetically obtain after significant expenditures of the Court's and the parties' time and resources, the Court should reject plaintiffs' nonsensical argument that the sweeping relief mandated by the Stipulated Order is "illusory."[10]

### B. Similarity Between the FTC Case and this Class Action

Plaintiffs devote most of their perfunctory opposition brief to quibbling about defendant's earlier filings wherein defendant argued that the differences between the FTC case and the present class action militated against allowing plaintiffs to broadly request and obtain through written discovery *all* documents Lifewatch furnished to the FTC (including sensitive financial information provided in connection with the pre-suit Civil Investigative Demand), irrespective of relevance. To the extent plaintiffs are mischaracterizing the earlier filings in an effort to show that the differences (which plaintiffs previously argued were effectively non-existent) between the litigations should preclude decertification, it should be noted that the court in *Kamm* rejected a similar argument, decertifying the class despite the court's acknowledgement that "the [government] action did not involve the same controversy, [and] did not include five of the defendants named in this [class] action." *Kamm, supra.* at 213.

The Court should also reject plaintiffs' conclusory argument that decertification is inappropriate in this case because "by decertifying the class here, the court would simply be leaving a part of this current class without redress…".[11] First, given the FTC Refund Report's

---

[9] Doc. 121, p. 2
[10] Doc. No. 216, p. 4.
[11] Doc. No. 216, p. 3.

explanation about the use of the Consumer Sentinel, plaintiffs' argument is factually inaccurate. Second, as set forth in *Kamm* -- which plaintiffs sidestep -- a government settlement is superior to a class action even when the government settlement provides *no relief* to a group of named plaintiffs and part of the putative class. *Kamm, supra* at 208. Indeed, in *Conde v. Sensa,* 2018 U.S. Dist. LEXIS 154031 (S.D. Cal. Sep. 10, 2018), the court ruled that a class action was not superior and explained:

> Plaintiff [] argues the Court should not consider the FTC settlement superior to the class action for two reasons. First, she distinguishes *Kamm* by stating that she estimates that classwide damages are more than $170 million, so "tens of thousands of class members" are still owed money despite the $26.5 million obtained by the FTC. This argument, however, was specifically rejected…in *Kamm*, in which the settlement totaled $3.3 million for losses of up to $200 million. The court noted "[i]t is true that not all members of the class appellants seek to represent will be protected by the California settlement; nor will the class recover an amount that is even close to that sought in the class action." The settlement did not cover all putative class members, and required the defendant to "use its best efforts to establish and implement a program to settle future disputes." Similarly, here, although the FTC settlement did not provide as much money as Plaintiff and the class members seek, this disparity does not prevent the Court from considering the FTC settlement in analyzing superiority.

*Id.* at *46-47. *Conde's* reasoning applies here. While plaintiffs' counsel may be disappointed that consumer redress was achieved through a settlement with the federal government and not in connection with the class action initiated back in 2013, and while plaintiffs' counsel may complain that the settlement with the federal government does not perfectly match the relief sought under the TCPA, the FTC settlement is nonetheless robust inasmuch as it provides, *inter alia*: 1) injunctive relief (i.e. a lifetime telemarketing ban); 2) monetary relief in the form of customer refunds upon request; and 3) additional monetary relief through distribution of the $2 million paid by defendants in the FTC action.

7

The Stipulated Order provides sweeping relief to class members, and plaintiffs' characterization of the relief -- approved by Judge Feinerman and obtained by the FTC after four years of resource-intensive litigation -- as "illusory" is simply without merit.

## II. CONCLUSION

For all of the foregoing reasons and the reasons set forth in the moving papers, a class action is no longer a superior mechanism for adjudicating plaintiffs' claims and the Court should enter a Decertification Order.

Dated: October 18, 2019

**Respectfully submitted,**
*/s/ Joseph Lipari*

Joseph Lipari, Esq.
The Sultzer Law Group
270 Madison Avenue, Suite 1800
New York, New York 10016
(917) 444-1960
liparij@thesultzerlawgroup.com

***Attorneys for Lifewatch, Inc.***